CHURCH OF THE TRANSFIGURING SPIRIT, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3389–80X.     Filed January 5, 1981.

G. David Thayer (an officer), for the petitioner.
*Deborah A. Butler,* for the respondent.

OPINION

EKMAN, *Judge*: This is an action for declaratory judgment pursuant to section 7428.[1] The case was submitted on a stipulated record under Rule 122, Tax Court Rules of Practice and Procedure,[2] and the stipulated record is incorporated herein by this reference.

---

[1] The prerequisites for declaratory judgment have been met: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted all its administrative remedies, sec. 7428(b)(2); petitioner timely filed its petition, sec. 7428(b)(3).

[2] After the administrative record was submitted and stipulated, petitioner made a motion to correct alleged errors in its figures. The motion is denied. See *Houston Lawyer Referral Service, Inc v. Commissioner,* 69 T.C. 570 (1980).

1

Petitioner, the Church of the Transfiguring Spirit, Inc., was incorporated on January 8, 1979, under the Non-Profit Corporation Act of New Mexico. Its principal office at the time of filing its petition was in New Mexico. The petitioner originally filed for exemption under section 501(c)(3) on February 27, 1979. Respondent issued his final adverse determination on December 19, 1979. Based upon the documents submitted by petitioner, respondent determined that (1) petitioner had net earnings inuring to the benefit of G. David Thayer (hereinafter Mr. Thayer) and Retta M. Thayer (hereinafter Mrs. Thayer), and (2) petitioner was operated for the private purpose of Mr. and Mrs. Thayer.

Petitioner was first formed as an association on August 30, 1977. A church charter was issued to petitioner from Mother Earth Church, Inc., on November 11, 1977.

Petitioner states in its articles of incorporation that its primary purpose is to operate a church for religious purposes. Its articles of incorporation further state that no power shall be exercised that will violate its exemption under section 501(c)(3); that upon dissolution, its assets may be transferred to any organization exempt from tax under section 501(c)(3); that no part of its net income or assets shall inure to the benefit of any private individual or director; and that no substantial part of its activities shall consist of carrying on propaganda or otherwise attempting to influence legislation.

A booklet entitled "Church of the Transfiguring Spirit" sets out in detail the origins, missions, resources, disciplines, and many other aspects of the Church. A three page document entitled "Article of Faith" further amplifies petitioner's belief. Petitioner has also circulated throughout Las Cruces, N. Mex., a flyer entitled "Do You Want the World to Stop So You Can Get Off?" In its booklet, petitioner described its mission as:

the liberation, the salvation, the transfiguration of all of its members. We seek to help you find your true Self in union with God. Union with God is True Life: all else is garbage.

The mission has two aspects. The first is to provide a nuturing community that will speed the progress of each member to ultimate union with God. * * *

The second aspect of our mission is to develop effective apostles to spread the Word throughout the land and all the world. * * *

The governing body of petitioner is the board of directors, consisting of Mr. Thayer, president; Mrs. Thayer, vice president; Jennie McCollum, treasurer; Laura Thayer, daughter of Mr. and Mrs. Thayer, secretary; and Monte McCollum, director. The only members of the petitioner are the members of the board of directors.

Mr. Thayer and Mrs. Thayer were ordained by Mother Earth Church, Inc., in August of 1976, and Jennie McCollum was ordained by Mother Earth Church, Inc., in August of 1978. Religious services of petitioner have usually been held on Sunday evenings in the home of Mr. and Mrs. Thayer. These services have always been open to the public, and attendance varies from 3 to 10, averaging approximately 6. As many as 16 different persons have participated at one time or another in the services or classes of petitioner. In addition, the ministers of petitioner have engaged in counseling and have performed two marriage ceremonies. In total, some 23 persons other than directors or officers have benefited from or participated in the activities of the Church.

Petitioner estimated that since the inception of the Church, Mr. and Mrs. Thayer have devoted over 500 hours to worship services, classroom instruction, preparation for classes and worship services, pastoral counseling, and two wedding services. Petitioner estimated that for the period August 30, 1977, until December 31, 1978, 405 hours were spent on behalf of petitioner by the Thayers. In calculating man hours, however, petitioner doubled those hours when both Mr. and Mrs. Thayer were present and active in their work for the Church. Thus, for the years 1977 and 1978, petitioner estimated that 620 man hours (190 hours individually and 215 hours jointly) were spent on behalf of the petitioner by the Thayers.

In its application for exemption, petitioner stated that the organization's source of financial support would be from "Tithes or regular donations by members (of the Church)" and "Offerings from interested persons (who attend services or classes)." For the year ending December 31, 1977, total receipts of petitioner were $1,390.32, all of which consisted of contributions from Mr. and Mrs. Thayer. For the year ending December 31,

1978, receipts of petitioner were $2,184.21, of which $2,074.21 was contributed by Mr. and Mrs. Thayer, $80 contributed by Jennie McCollum individually, and $30 contributed jointly by Jennie and Monte McCollum.

Total expenditures of petitioner for the year 1977 were $1,208.32. Listed as expenses were an offering to Mother Earth Church, Inc., of $18.50, and a housing allowance of $1,189.82 paid jointly to Mr. and Mrs. Thayer. For the year 1978, total expenditures were $2,118.39. Listed as expenses were other expenses of $118.39[3] and a housing allowance of $2,000 paid jointly to Mr. and Mrs. Thayer.

Petitioner projected that for 1979, $3,000 would be received as gross offerings and tithes and $2,400 would be expended for a housing allowance, and that for 1980, $3,500 would be received as gross offerings and tithes and $2,640 would be expended as a housing allowance. Petitioner also states that compensation to its ministers in the future will be limited to a housing allowance since its religious beliefs preclude the payment of a salary to a minister.[4]

Section 501(a) provides exemption from Federal income taxation for organizations described in section 501(c). In order to qualify for exemption under section 501(c)(3), an organization (1) must be organized and operated exclusively for exempt purposes, (2) no part of its net earnings can inure to the benefit of any private shareholder or individual, and (3) no substantial part of its activities may consist of political or lobbying activity. *People of God Community v. Commissioner*, 75 T.C. 127 (1980); *Western Catholic Church v. Commissioner*, 73 T.C. 196 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir. 1980); *Unitary Mission Church v. Commissioner*, 74 T.C. 507 (1980), on appeal (2d Cir., July 31, 1980).

Respondent argues that because of the housing allowances paid by petitioner to Mr. and Mrs. Thayer, earnings inure to the

---

[3]Other listed expenses include textbooks for classes ($55.69), offerings to Mother Earth Church, Inc. ($36), reproduction costs, wedding services ($13.52), filing fees ($10), and charge for printed checks ($3.18).

[4]Petitioner states that although at present it has no plans to do so, "in the future the church may offer transportation aid to its ministers."

benefit of a shareholder or individual, and thus, petitioner is not operated exclusively for exempt purposes. Although separate requirements, the "private inurement" test, and the "operated exclusively for exempt purposes" test often substantially overlap.[5] *Western Catholic Church v. Commissioner, supra; People of God Community v. Commissioner, supra.* An organization is not operated exclusively for an exempt purpose if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs.; *Western Catholic Church v. Commissioner, supra.* Section 1.501(c)(3)–(1)(d)(1)(ii), Income Tax Regs., provides that an organization is not operated exclusively for exempt purposes unless it is operated for the benefit of the public rather than for the benefit of a private interest. Petitioner must therefore establish that it is not organized or operated for the benefit of private interests such as those of its founder or his family or a shareholder of the organization. *Basic Bible Church v. Commissioner,* 74 T.C. 846 (1980).

Since "no part" of the net earnings of an organization may inure to the benefit of a private shareholder or individual[6] (sec. 501(c)(3)), the amount or extent of such inurement or benefit is not determinative. *Unitary Mission Church v. Commissioner, supra.* A private shareholder or individual is a person having a personal or private interest in the activities of the organization. Sec. 1.501(a)–1(c), Income Tax Regs.

After careful examination of the administrative record, we are unable to find that petitioner was operated exclusively for exempt purposes or that no part of its net earnings inured to the benefit of a private shareholder or individual. Virtually all of petitioner's income was expended in the years in question as housing allowances for the benefit of Mr. and Mrs. Thayer. Mr.

---

[5]This Court has previously commented that the prohibition against private inurement of net earnings appears to be "redundant to the requirement" that an organization be operated exclusively for exempt purposes since such a benefit would be a private, not public, purpose. See *Unitary Mission Church v. Commissioner,* 74 T.C. 507, 512 n. 7 (1980), on appeal (2d Cir., July 31, 1980); *Western Catholic Church v. Commissioner,* 73 T.C. 196, 209 n. 27 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir. 1980).

[6]Respondent concedes that pursuant to Rules 213(a)(2) and 217 (c)(2)(ii), Tax Court Rules of Practice and Procedure, it has the burden of proof on the issue of private inurement.

Thayer as president and Mrs. Thayer as vice president together with their daughter Laura Thayer not only had control of the expenditures and reimbursements but also had control of the board of directors. Furthermore, for the year 1977, all, and for the year 1978, virtually all, of petitioner's income consisted of contributions from Mr. and Mrs. Thayer.

Petitioner contends that the housing allowances given to the Thayers were no more than reasonable compensation for the services rendered by them, and argues that if reasonable compensation may not be paid to ministers, few, if any, organizations would qualify for exemption under section 501(c)(3). See *Saint Germain Foundation v. Commissioner*, 26 T.C. 648 (1956); *Universal Church of Scientific Truth, Inc. v. United States*, an unreported case (N.D. Ala. 1973, 32 AFTR 2d 73–6122, 74–1 USTC par. 9360); *Founding Church of Scientology v. United States*, 188 Ct. Cl. 490, 412 F.2d 1197 (1969), cert. denied 397 U.S. 1009 (1970). However, here, virtually all the income of petitioner went to Mr. and Mrs. Thayer, virtually all the income is contributed by Mr. and Mrs. Thayer, and virtually all the control of petitioner is in Mr. and Mrs. Thayer. We cannot characterize the amounts paid by petitioner to Mr. and Mrs. Thayer as reasonable compensation paid by an organization operating for public and not private interests.

Petitioner contends that net earnings should be defined as net profits and that after deduction of the housing allowance, no net profits remain which inure to an individual. However, net earnings as referred to in section 501(c)(3) include more than net profits and may inure to an individual in ways other than a distribution of dividends or excessive salaries. *Unitary Mission Church v. Commissioner, supra* at 512; *Founding Church of Scientology v. United States*, 412 F.2d at 1200.

Petitioner argues that the facts of the present case are similar to those of *Universal Church of Scientific Truth, Inc. v. United States, supra*. In that case, however, a significant portion of the revenues of the church came from charges made for published materials, and there was nothing to indicate that the ministers personally contributed or that nearly all the expenses of the organization were in the form of compensation to the ministers.

We believe that the cited case is thus distinguishable. In four recent cases involving facts more closely resembling the present case, this Court has denied exemption. See *Southern Church of Universal Brotherhood Assembled, Inc. v. Commissioner*, 74 T.C. 1223 (1980); *Basic Bible Church v. Commissioner, supra; Unitary Mission Church v. Commissioner, supra; Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531 (1980).

We do not doubt that petitioner and its members are sincere in their convictions. Its principles and beliefs are thoughtfully and eloquently set forth in its publications and in the present record. However, we are unable to find that petitioner has complied with the statutory requirements for exemption. Based upon the administrative record, we cannot say respondent's denial of exempt-organization status to petitioner under section 501(c)(3) was erroneous.

*Decision will be entered for the respondent.*