JON M. SOLANDER and MARVALEE W. SOLANDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solander v. Commissioner
Docket No. 13005-79.
United States Tax Court
T.C. Memo 1982-161; 1982 Tax Ct. Memo LEXIS 591; 43 T.C.M. (CCH) 934; T.C.M. (RIA) 82161; March 29, 1982. Peter Stromer, for the petitioners. John E. Lahart and Constance L. Couts, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *593 OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined a $ 3,300 deficiency in petitioners' 1977 Federal income tax. The sole issue for decision is whether petitioners are entitled to a deduction for charitable contributions in excess of the amount allowed by respondent. [3]
FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Jon and Marvalee Solander resided in Oakland, California, at the time their petition in this case was filed. Petitioners timely filed a joint Federal income tax return for the taxable year 1977 with the Director, Internal Revenue Service Center, Fresno, California. Mr. Solander was employed full-time during 1977 by IBM as a field engineer, servicing and installing computer equipment. Mr. Solander's post-high school education *594 consists of two and one-half years of college, and his theological training consists of church and Sunday school attendance as a child. The Universal Life Church, Inc., of Modesto, California, issues charters to form new congregations. The Universal Life Church was a qualified section 501(c)(3) organization during 1977 but it did not possess a group exemption. In the latter part of 1977 Mr. Solander wrote to the Universal Life Church, Inc. and expressed a desire to become a minister and to form a congregation. In exchange for a fee the Universal Life Church, Inc. sent Mr. Solander a wallet-sized card in the mail entitled "Credentials of Ministry." Mr. Solander also received a preprinted form entitled "Charter Agreement" which contained blank lines for Mr. Solander to fill in the date, name and address of his church, and lines for the signature and address of the pastor, treasurer and secretary. Mr. Solander typed in "OLD SAINT LUCIFERS (ULC)" (hereinafter Old Saint Lucifer's or church) as the name of the church, and listed the address of his residence as the church's address. The Charter Agreement was signed by "Rev. Jon Michael Solander" as Pastor, "Rev. Marvalee Solander" as *595 Treasurer, and "Rev. Judith F. Presley" as Secretary. Mr. Solander did not conduct any religious services at his residence, or anywhere else, and never performed any marriages or baptisms. Mr. Solander was available for "pastoral counseling" and did counsel one long-time friend who was experiencing family problems. Mr. Solander's congregation consisted of Mr. and Mrs. Solander, Judith Presley, Roger Pritchard and Donna Caine. Judith Presley's name was removed from the records at the Universal Life Church, Inc. in March 1979, because she "did not take this endeavor seriously" and was no longer affiliated with Old Saint Lucifer's. In December 1977, Mr. Solander opened a checking account at the Bank of Canton in San Francisco in the name of Old Saint Lucifer's. Mr. and Mrs. Solander were the only persons entitled to draw checks on the account. Mr. and Mrs. Solander closed all of their personal savings accounts in December 1977, and reopened them in the name of Old Saint Lucifer's. In December 1977, Mr. Solander wrote five checks totaling $ 6,692.36 to Old Saint Lucifer's, and one of the checks was used to open a savings account at Citizens Savings and Loan Association. Prior *596 to the establishment of the Old Saint Lucifer's checking account, all payments for the mortgage, utilities, medical expenses, television equipment and household expenses were made by Mr. and Mrs. Solander from their personal checking account. The Old Saint Lucifer's cashbook reflects the use of its funds for the following expenses during 1977 and 1978: Mortgage payments on residence [4]
$ 1,346
Utilities for residence
205
Remodeling of residence
1,500
Furniture recovering at residence
136
Insurance for residence
300
Medical expenses for Marvalee Solander
3,340
Purchase of television equipment
4,506
Typewriter
458
Popular Mechanics magazine
10
Expenses of pastors
861
Cash
2,850
TOTAL
$ 15,512
Mr. Solander had a strong interest in electronics and Video equipment and owned some television recording equipment which was located in his home. Mr. Solander claims some of this equipment was donated to Old Saint Lucifer's *597 during 1977, but neither the physical location of the equipment nor Mr. Solander's control over and use of it changed after the alleged donation. Mr. and Mrs. Solander were divorced sometime during 1979. In her petition for divorce filed with the Superior Court of California, Alameda County, on February 2, 1979, Mrs. Solander included the television equipment purportedly donated to Old Saint Lucifer's and the savings accounts in the name of Old Saint Lucifer's as marital community property. The Old Saint Lucifer's savings accounts were made a part of Mr. and Mrs. Solander's property settlement agreement which they both signed on May 11, 1979. As a result of the divorce settlement, Mr. Solander borrowed $ 25,000 from Fidelity Savings and Loan to pay Mrs. Solander. At least part of the Fidelity loan has been repaid out of the funds transferred to Old Saint Lucifer's. Old Saint Lucifer's made loans to members, board members and officers. Repayment of these loans was either nonexistent or were entered on the books of account of Old Saint Lucifer's as a donation. On their 1977 joint Federal income tax return, Mr. and Mrs. Solander reported adjusted gross income in the amount *598 of $ 26,573.42, and claimed a deduction for charitable contributions in the amount of $ 13,280.95. Respondent has disallowed the following portion of petitioners' charitable contributions deduction: Old Saint Lucifer's
Savings account transfers
$ 3,666.09
Check to Old Saint Lucifer's
6,692.36
Television equipment
2,750.00
Raffle ticket
1.00
Christmas Tree Farm
11.25
TOTAL
$ 13,120.70
No evidence was introduced to substantiate the deduction with respect to the Christmas Tree Farm and raffle ticket. OPINION The only issue for our decision is whether petitioners are entitled to a charitable contribution deduction for cash and property transferred to Old Saint Lucifer's during the year 1977. Respondent advances several positions to show that a charitable contribution deduction is not allowable under section 170(c)(2). Petitioners contend, that, although Old Saint Lucifer's was organized by petitioner Jon M. Solander, nevertheless, it was operated exclusively in all respects as a religious organization as contemplated by section 170(c)(2)(B). In addition, petitioners argue, for the first time on brief, that the charitable contribution deduction should *599 be allowed since respondent failed to follow section 1.170A-1(a)(2)(iii), Income Tax Regs., which requires taxpayers to substantiate charitable contributions by submitting certain information to respondent when requested. Since this argument is wholly without merit, it can be summarily dismissed. In the first instance, petitioners' argument is untimely since the issue was raised for the first time on brief. Robertson v. Commissioner,55 T.C. 862 (1971). Secondly, their argument is not supported by the record. Respondent attempted to obtain information pertaining to the activities of Old Saint Lucifer's on several occasions only to be denied such information by petitioners. Apparently, petitioners' argument was set forth simply to cloud the real issue herein as to whether Old Saint Lucifer's was organized and operated exclusively for religious purposes. Petitioners' primary argument is that they are entitled to a charitable contribution deduction under section 170(a) for the property transferred to Old Saint Lucifer's, a religious organization. Respondent has disallowed the deduction on the basis that no contributions were actually made and that Old Saint Lucifer's *600 was not a qualified religious organization as defined in section 170(c) since it was not operated exclusively for religious or other charitable purposes. We agree with respondent. Petitioner has the burden of proof to establish that a contribution to Old Saint Lucifer's qualifies as a charitable contribution. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Although petitioners opened a checking and savings account in the name of Old Saint Lucifer's, the apparent transfer of funds from petitioner's bank accounts to Old Saint Lucifer's was a change in name only. The Solanders continued to be the only signatories on the accounts; the funds in the accounts, as well as some cash provided by petitioners, were used primarily to pay the personal living expenses of petitioners. The television equipment ostensibly given to Old Saint Lucifer's was not even moved and continued to be used by petitioners as their own. In fact, the savings accounts and television equipment ostensibly given to Old Saint Lucifer's were involved in the property settlement in connection with the divorce of Mr. ane Mrs. Solander. Petitioners did *601 not relinquish dominion and control of any of the property religious or charitable purposes and it violated the prohibition against net earnings inuring to the benefit of any private individual. Petitioners simply contend that their personal residence constitutes the church property. But there is no evidence in the record that Old Saint Lucifer's carried on any traditional religious activities, such as religious services, marriages, baptisms, or any other similar activity. Also the record does not disclose that Old Saint Lucifer's had a church membership for which to perform religious functions. At most, Mr. Solander did some counseling for two or three individuals who were the apparent members of the church. On these facts we must conclude that the religious activities of Old Saint Lucifer's were minimal at the very most and not sufficient to qualify it as an organization operated exclusively for religious or charitable purposes in 1977. Furthermore, petitioners have failed to prove that no part of the net earnings of Old Saint Lucifer's inured to the benefit of private individuals. As noted above practically all of the receipts of Old Saint Lucifer's were used to pay the *602 personal living expenses of petitioners. This is particularly true since we have found that petitioners did not actually transfer any property to Old Saint Lucifer's. At least a part of its "net earnings" inured to the benefit of petitioners. See McGahen v. Commissioner,76 T.C. 468 (1981); Church of the TransfiguringSpirit v. Commissioner,76 T.C. 1 (1981); Unitary Mission Church v. Commissioner,74 T.C. 507 (1980); Western Catholic Church v. Commissioner,73 T.C. 196 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980). For the above reasons we find that petitioners are not entitled to a deduction for contributions to Old Saint Lucifer's. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. At trial, respondent for the first time asserted, pursuant to section 6214(a), that petitioners are liable for the section 6653(b) addition to tax. Respondent's answer reflecting this assertion was filed on October 23, 1980. On brief, however, respondent conceded that petitioners are not liable for this addition to tax.↩
4. Although the mortgage payments were made from the checking account of Old Saint Lucifer, Mr. and Mrs. Solander claimed an interest expense deduction with respect to these mortgage payments on their 1978 Federal income tax return.↩