HOWARD P. HARCOURT and TOMMYE A. HARCOURT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harcourt v. Commissioner
Docket No. 12585-81.
United States Tax Court
T.C. Memo 1982-621; 1982 Tax Ct. Memo LEXIS 125; 44 T.C.M. (CCH) 1506; T.C.M. (RIA) 82621; October 25, 1982. Howard P. Harcourt, pro se. Donna I. Epstein, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax under section 6653(a) as follows: Deficiency
Addition to Tax
Taxable Year
in Tax
Section 6653(a)
1977
$4,070
$203.50
1978
$4,130
$206.50
1979
$4,305
$215.25
*127 After one concession by petitioners, the only issues remaining for decision, for each of the taxable years, are: (1) Whether petitioners are entitled to deductions under section 170 for charitable contributions; and (2) whether any underpayment of tax was due to negligence or an intentional disregard of the rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts in this case have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Howard P. and Tommye A. Harcourt, husband and wife, resided at 31001 Palomares Road, Castro Valley, California, during the years in issue and when the petition herein was filed. They filed timely joint Federal income tax returns for the years 1977, 1978, and 1979, on which they claimed deductions for charitable contributions allegedly made to an organization known as the Universal Life Church of Castro Valley (hereinafter ULC of Castro Valley). During the years in issue, petitioner Howard P. Harcourt (hereinafter referred to as petitioner) was employed on a full-time basis as an engineer with the Bay Area *128 Rapid Transit District of Oakland, California; his wife was employed as a secretary during 1977 and 1978, and as an accounting clerk during 1979. Petitioner first became interested in forming his own church after learning from a radio program that it was possible to establish a church by applying to the Universal Life Church, Inc. of Modesto, California (hereinafter ULC). The ULC was a tax-exempt organization within the meaning of section 501(c)(3) during the years in issue. [3]
On November 17, 1977, petitioner sent a check for $70 to the ULC. In return for this $70, the ULC mailed petitioner a "Charter," a "Charter Agreement," a pocket-sized document entitled "Credentials of Ministry," and a document which states, in part: "This is to certify that REVEREND HOWARD P. HARCOURT has been awarded an honorary Doctor of Divinity Degree this day NOVEMBER 18, 1977 by Universal Life Church, *129 Inc." The "Charter" issued by the ULC is simply a one-page document dated November 18, 1977, which states that the ULC of Castro Valley "has been granted by" the ULC. This document also shows the signature of the ULC president, the names of the ULC board members, and the words "Charter No." followed by the numerals 25,579. The "Charter Agreement" is a printed form, also dated November 18, 1977. The printed body of this document states, in part: "This Church believes, as does the ULC, in that which is 'right' -- and every person has the right to decide what is 'right' for him. Religious freedom is our heritage!* * * The ULC Federal Tax-Exempt Number is EIN 94-1599959.This number is to be used to identify all chartered ULC churches as part of the ULC -- WE ARE ONE CHURCH." The "Church" referred to in the "Charter Agreement" is identified at the top of the document as the ULC of Castro Valley, with an address which is the same as that of the residence of petitioner. The document identifies petitioner as pastor of the ULC of Castro Valley, petitioner's wife as its treasurer, and Ellen McLeod, petitioner's mother-in-law, as its secretary. [4]
*130 Apart from obtaining these materials from the ULC, petitioner executed a document, together with his wife and mother-in-law, which states that the religious purposes of the ULC of Castro Valley are "to preach and teach brotherhood, and the living of one's life within the guidelines of the 'Golden Rule'." Petitioner also established, independent of the ULC, a number of rules and regulations relating to the operation and control of the ULC of Castro Valley. On December 2, 1977, petitioner withdraw $4,500 from his personal checking account and used the funds to open an account in the name of the ULC of Castro Valley at the Bank of America in Castro Valley. Throughout the years in issue, the only funds that were ever deposited to the account of the ULC of Castro Valley came from petitioners' personal checking account. The record shows that the funds in the account of the ULC of Castro Valley were used exclusively to pay numerous living expenses of petitioner and his family -- primarily expenses associated with petitioner's residence, such as mortgage payments, property taxes, utilities, insurance, and general home maintenance expenses. [5]
*131 On December 19, 1977, an appraisal was made of some of petitioner's personal property. The property consisted mostly of household furnishings and was appraised at a value of $12,181. Following the appraisal, petitioner's mother-in-law, as secretary of the ULC of Castro Valley, wrote a letter thanking the petitioners for the "donation of furnishings and equipment to be used for the new Church." Thus, according to petitioner, the residence at 31001 Palomares Road became the furnished parsonage and headquarters of the ULC of Castro Valley. During the years in issue, petitioner did not conduct any formal or traditional religious services at his residence or elsewhere. There is no evidence in the record to suggest that he performed any acts ordinarily performed by ministers. His activities as pastor of the ULC of Castro Valley consisted of presiding over meetings, held on a weekly basis at his residence, which were attended by six to ten individuals. Some of those who came to these meetings were his personal friends and business acquaintances, and that the meetings consisted of group discussions about the lives of those in attendance. The so-called charitable activities of the *132 ULC of Castro Valley consisted of growing vegetables at his residence for donation to child care centers and similar organizations. Petitioner made himself available for counseling persons with marital problems; however, it does not appear that he did any counseling. On their 1977, 1978, and 1979 joint Federal income tax returns, petitioners claimed deductions for charitable contributions of $16,751, $15,805, and $15,400, respectively. The amount of the deduction claimed in 1977 represents the $70 mailed to the ULC, the $12,181 appraised value of petitioners' personal property purportedly donated to the ULC of Castro Valley, and the $4,500 transferred to the account of the ULC of Castro Valley. The amounts claimed as deductions in 1978 and 1979 represent transfers of cash from petitioners' personal checking account to the account of the ULC of Castro Valley. Respondent has disallowed these deductions, in full, based upon his determination that the ULC of Castro Valley is not an organization which meets the requirements of section 170. In addition, respondent has determined that petitioners are liable for the addition to tax prescribed in section 6653(a). OPINION The first *133 issue for decision is whether petitioners are entitled to any deductions for charitable contributions under section 170. Initially, we note that the burden of proof is on the petitioners in this proceeding to demonstrate that they are entitled to the deductions disallowed by respondent. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 170(a) states the general rule that there shall be allowed as a deduction any charitable contribution which is paid within the taxable year. The term "charitable contribution" is defined in subsection (c), in pertinent part, as follows: (c) Charitable Contribution Defined.-- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (2) A corporation, trust, or community chest, fund, or foundation-- (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children *134 or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual. The petitioner advances two arguments in support of the deductions claimed for charitable contributions. He contends that the ULC of Castro Valley is simply a part of the tax-exempt ULC and should, thus, qualify as a tax-exempt organization under section 501(c)(3). He also contends that the ULC of Castro Valley satisfies the requirements of section 170(c)(2) on its own merits. We find that the evidence does not support either of these arguments. With respect to petitioner's first argument, we note that there is nothing in the record to establish that the ULC of Castro Valley was controlled by or operated in conjunction with or as part of the ULC. Moreover, the argument that the ULC and the organizations which it charters constitute one tax-exempt church was addressed and rejected under similar facts in Riemers v. Commissioner,T.C. Memo. 1981-456, wherein this Court stated: In Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to *135 be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption. United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79-954, 79-1 USTC P9344). Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. See also Magin v. Commissioner,T.C. Memo. 1982-383; Hall v. Commissioner,T.C. Memo. 1982-337. Turning to petitioners' second argument, we find that petitioners have failed to prove that the ULC of Castro Valley was an organization that satisfied the requirements of section 170(c)(2). Rather than being organized and operated exclusively for religious or charitable purposes, the record shows that the ULC of Castro Valley was organized and operated almost exclusively for the benefit of petitioner and his family. The weekly meetings held at petitionerl's residence appear to have been merely informal social gatherings, unrelated *136 to any religious purposes; the charitable activities of the ULC of Castro Valley were minimal. Furthermore, petitioners have failed to prove that no part of the earnings of the ULC of Castro Valley inured to the benefit of any private individual. To the contrary, the record establishes that the receipts of the ULC of Castro Valley were used primarily to pay the personal living expenses of petitioner and his family. See McGahen v. Commissioner,76 T.C. 468 (1981), on appeal (3d Cir., Aug. 24, 1981); Church of the Transfiguring Spirit, Inc. v. Commissioner,76 T.C. 1 (1981). In addition, we note that the term "charitable contribution," as it is used in section 170, is considered synonymous with the word "gift." Sutton v. Commissioner,57 T.C. 239, 242 (1971); Wolfe v. Commissioner,54 T.C. 1707, 1713 (1970). "A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift." DeJong v. Commissioner,36 T.C. 896, 899 (1961), *137 affd. 309 F.2d 373 (9th Cir. 1962).In the instant case, the property and cash ostensibly donated to the ULC of Castro Valley never left petitioners' dominion or control. Petitioners continued to enjoy the full benefit and use of both the household furnishings and the cash deposited in the account of the ULC of Castro Valley. Transfers of property under these circumstances do not constitute contributions or gifts within the meaning of section 170. Solander v. Commissioner,T.C. Memo. 1982-161; Manson v. Commissioner,T.C. Memo. 1980-315. For the reasons set forth above, we conclude that petitioners are not entitled to a deduction for charitable contributions for the transfers of property and cash to the ULC of Castro Valley. We also find that the $70 initially sent to the ULC was not a contribution within the meaning of section 170, since petitioners clearly received consideration in exchange for this payment. The second issue for our decision is whether petitioners are liable for the five percent addition to tax prescribed in section 6653(a) for negligence or intentional disregard of the rules and regulations. Petitioners have *138 the burden of proving that no part of any underpayment of tax was due to negligence or intentional disregard of the rules and regulations. Axelrod v. Commissioner,56 T.C. 248, 258 (1971). At the trial, petitioner appeared to be an intelligent and well-educated individual, one who must have known that the creation and operation of the ULC of Castro Valley would not support the deductions claimed in this case. Petitioner argues, however, that the section 6653(a) addition should not be upheld because of assurances by the ULC that contributions to the ULC of Castro Valley would be fully deductible under section 170. We find that, even if petitioner relied on any such assurances by the ULC, his reliance was not justified by the facts of record. Since petitioners have failed to prove a lack of negligence orof disregard of the rules and regulations, theadditions to tax under section 6653(a) are sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. In Universal Life Church, Inc. v. United States,372 F.Supp. 770↩ (E.D. Cal. 1974), the ULC was held to be a tax-exempt organization within the meaning of section 501(c)(3). On April 13, 1976, the Internal Revenue Service recognized the ULC as exempt under section 501(c)(3).
4. Ellen McLeod resided with petitioners during the years in issue, and she was claimed as a dependent by them on their joint returns for each year.↩
5. Although petitioners' mortgage patments and the payments for property taxes were made from the account of ULC of Castro Valley, petitioners continued to claim deductions for interest payments attributable to the mortgage and for the taxes on the residence.↩