RICHARD M. HODGES AND ALICIA M. HODGES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hodges v. Commissioner
Docket Nos. 6452-80, 12562-81, 20945-81
United States Tax Court
T.C. Memo 1984-385; 1984 Tax Ct. Memo LEXIS 286; 48 T.C.M. (CCH) 617; T.C.M. (RIA) 84385; July 26, 1984. *286 Held: Petitioners failed to prove that they made any charitable contributions to Universal Life Church, Inc., of Modesto, California or that any contributions they may have made to their own Universal Life Church "congregation" qualified as charitable contributions under sec. 170(c)(2), I.R.C. 1954. Held further: Petitioners are liable for additions to tax under secs. 6651(a) and 6653(a). Richard M. Hodges, pro se. Javier Alabart, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies and additions to tax in these consolidated cases: Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
1976
$5,453
$363
$371
1977
4,603
230
1978
5,649
282
After concessions, the issues remaining for our consideration are whether petitioners are entitled to deductions for charitable contributions in the amounts of $15,034, $11,000 and $12,350 for their taxable years 1976, 1977 and 1978, respectively, and whether petitioners are liable for the additions to tax as determined by the respondent. FINDINGS OF FACT *287 Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners [2] resided in Canoga Park, California at the time of the filing of the petitions herein. Richard M. Hodges holds a Bachelor of Science degree from Utah State University in accounting and marketing. During the taxable years in issue and at the time of trial petitioner was employed in the Aero Products Division of Litton Industries in Woodland Hills, California, as the supervisor of operations. In that capacity Mr. Hodges supervised approximately 350 people and traveled extensively. Mr. Hodges received a document entitled "Credentials of Minister" from the Universal Life Church, Inc. of Modesto, California (ULC, Inc.) dated January 5, 1976. [3] Petitioner received another document from ULC, Inc. dated January 14, 1976 entitled "CHARTER" bearing the notation "Charter No. 14,958." The latter document purports to be signed by Kirby J. Hensley, D.D., President of ULC, Inc. and reads as follows: *288 This is to certify that a Congregation of the Universal Life Church, Inc. is started this date January 14, 1976 at 6225Shoup Avenue, City Woodland Hills State California.
Neither party to this agreement is the general agent of the other. The Universal Life Church, Inc. issues this charter in consideration of the signatories' promise that they will indemnify, save harmless, and defend the Universal Life Church, Inc. from all liability from damages to persons or property in any suit at law arising out of this agreement. By this agreement, the Universal Life Church, Inc. hereby authorizes this chartered congregation to open a bank account in the name of the Universal Life Church, Inc. As "pastor," petitioner opened a checking account in the name "Valley Universal Life Church" at Barclays Bank of California, Account Number 5481-00289 on January 14, 1976. Mr. Hodges had sole signatory *289 authority over the account. The address listed for this account was petitioner's home address. On March 2, 1976, petitioner transferred 800 shares of Litton Industries stock to Valley Universal Life Church and on March 16, 1976, he transferred another 69 shares. These 869 shares had been held by Mr. Hodges for more than six months and were worth a total of $13,035 at the time of transfer. Also on March 16, 1976, petitioner transferred an additional 95 shares of Litton Industries stock to Valley Universal Life Church. These shares had been held less than six months and petitioner's cost basis in such shares was a total of $478.61 During 1976, petitioner transferred funds totalling $1,520 to the Valley Universal Life Church account. With respect to the 1976 transfers of stock and cash, petitioners claimed the following charitable contributions of their 1976 Federal income tax return: Non cash contributions
$13,514
Cash contributions
1,520
Total
$15,034 During the following years, petitioners transferred the following amounts to the Valley Universal Life Church account and claimed corresponding charitable contributions deductions for those taxable years: Year
Amount
1977
$11,000
1978
12,350
The *290 Valley Universal Life Church has no physical facilities other than Mr. Hodges' home. Mr. Hodges resided at 6225 Shoup Avenue in Woodland Hills in 1976 and 1977. In 1978, petitioner moved to 7412 Liz Court in Canoga Park. Legal title to both houses was in petitioner's name at all relevant times. Checks were written on the account of Valley Universal Life Church during the taxable years in issue to pay petitioner's housing expenses, including mortgage payments, interest, taxes, utilities, maintenance, repairs, insurance, furnishings, and improvements. In addition, these funds were used to pay petitioner's automobile expenses including loan or lease costs, taxes, fuel, insurance, maintenance and repairs. Numerous checks were also written for petty cash, funds over which Mr. Hodges had complete control. In the notices of deficiency dated February 19, 1980, March 24, 1981, and July 10, 1981, respondent disallowed claimed contributions to the Universal Life Church for 1976, 1977 and 1978 on the basis that it had not been established that the amounts were contributed by petitioner to a donee organization qualified under the Internal Revenue Code. In addition, respondent determined that *291 the addition to tax for negligence was applicable for all three tax years and that the addition to tax for late filing was applicable for tax year 1976. OPINION The first issue for our decision is whether the donee of the claimed charitable contributions, Valley Universal Life Church, was a religious organization qualified under section 170(c). We note initially that deductions from Federal income tax are matters of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). As such, the burden of proving entitlement to a deduction is upon the taxpayer. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 170(a) allows as a deduction any charitable contribution which is made during the taxable year. The term "charitable contribution" is defined in subsection (c) as follows: (c) CHARITABLE CONTRIBUTION DEFINED.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, *292 or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual. * * * Petitioner argues that the claimed contributions of $15,034, $11,000 and $12,350 made in 1976, 1977 and 1978, respectively, are deductible under section 170(c) because Valley Universal Life Church is entitled to the benefits of the specific tax exemption held by Universal Life Church, Inc. of Modesto, California. Petitioner claims that Valley Universal Life Church is the same organization as Universal Life Church, Inc. of Modesto, relying on church literature proclaiming "We are one Church" and its promise to provide its "congregations" with tax exempt status. Although the Modesto organization was held to be tax exempt under section 501(c)(3) in Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the holding in that case applied only to that specific organization and was not a group exemption. Davis v. Commissioner,81 T.C. 806, 815 (1983). *293 [4] Whether labeled as "charters," "congregations," or any other term, the various groups authorized by Universal Life Church, Inc.'s charters are separate and distinct from the Modesto organization and are not entitled to the benefit of its tax exempt status.[5]
Petitioner also argues that the contributions were made to Universal Life Church, Inc. itself and not to his own Valley Universal Life Church "congregation" and a separate entity. In support of his argument petitioner presented the testimony of "Bishop" Robert E. Imbeau, the Vice President of Universal Life Church, Inc. and a member of its board of directors. We found Mr. Imbeau's testimony evasive and utterly without credibility. Petitioner introduced three form documents bearing Universal Life Church, Inc. *294 letterhead and Mr. Imbeau's signature purportedly acknowledging the receipts of contributions from petitioner for 1976, 1977 and 1978. Upon questioning by respondent's counsel, however, Mr. Imbeau admitted that he did not personally receive the purported contributions and that the receipts reflect only the information Mr. Hodges sent to church headquarters in Modesto. In addition, petitioner admitted that the amounts labeled as contributions on the receipts were deposited in the bank account opened in the name of Valley Universal Life Church. Thus, petitioner has utterly failed to meet his burden of proof. Moreover, we find that Valley Universal Life Church itself does not meet the requirements of section 170(c) in that the vast majority of the funds contributed to it by Mr. Hodges inured to his benefit in that they were used to pay his personal living expenses. See Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1 (1981); Basic Bible Church v. Commissioner,74 T.C. 846 (1980). We believe it is clear that Valley Universal Life Church was not organized and operated exclusively for religious purposes as required by section 170(c)(2). Rather, it was created in an attempt *295 to transform petitioner's nondeductible personal living expenses into deductible charitable contributions. That attempt has failed. Respondent's determination is sustained. Petitioner's accounting background and his position with Litton Industries indicates that he must possess some reasonable degree of intelligence. As such, we are incredulous that he could believe that the payment of Federal income taxes on his income could be so easily avoided. We find petitioner's behavior dangerously close to fraud. Respondent determined that petitioners were liable for the addition to tax under section 6651(a) for the taxable year 1976 for the late filing of their return. Petitioners offered no evidence explaining the delinquent filing of their return. Accordingly, they have failed to meet their burden of proof. Respondent's determination is sustained. Davis v. Commissioner,supra at 820; Fischer v. Commissioner,50 T.C. 164, 177 (1968). Respondent also determined that petitioners were liable for the section 6653(a) addition to tax for negligence or intentional disregard of rules and regulations for all three taxable years. Petitioners have also failed to meet their burden of proof on *296 this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Respondent's determination is sustained. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. As the facts herein relate solely to the activities of Richard Hodges, all references to "petitioner" will refer to the petitioner-husband.↩
3. The religious doctrine of the Universal Life Church as stated by Mr. Hodges is "do that which is right and each person has a right to interpret what is right for them as long as it does not infringe on the rights of others." No other information on its character as a religious organization was presented.↩
4. See also Mendenhall v. Commissioner,T.C. Memo. 1983-491; Murphy v. Commissioner,T.C. Memo. 1983-59; Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553↩. 5. We note that the charter itself specifically recognizes the separateness of the two groups by the language appearing in fine print on the "CHARTER" document that "Neither party to this agreement is the general agent of the other."↩