DOUGLAS DAVID CHANDLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chandler v. Commissioner
Docket Nos. 6302-84; 33960-86.
United States Tax Court
T.C. Memo 1987-558; 1987 Tax Ct. Memo LEXIS 550; 54 T.C.M. (CCH) 1040; T.C.M. (RIA) 87558; November 9, 1987. Douglas David Chandler, pro se. Alan M. Jacobson, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINI0N FAY, Judge: In these consolidated cases, respondent disallowed petitioner's deductions for charitable contributions and determined deficiencies in petitioner's Federal income tax as follows: Docket No.
Taxable Year Ended
Deficiency [1]
6302-84
December 31, 1980
$ 2,450.00
December 31, 1981
2,762.00
33960-86
December 31, 1983
2,264.00
December 31, 1984
2,401.00
As a result of concessions at trial, the only issue which remains for decision is whether petitioner is entitled *553 to deductions pursuant to section 170(a)(1) for charitable contributions allegedly made to the Aquarian Brotherhood Church, Inc. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Kansas City, Missouri, at the time he filed the petition herein. During the years in issue, petitioner was employed as a tool and die maker at IMCO Container Company in Kansas City, Missouri. On his income tax returns for these years, petitioner deducted amounts transferred to the Aquarian Brotherhood Church, Inc. ("ABC") as charitable contributions as follows: Taxable Year [2]
Amount of Contribution
1980
$ 10,082
1981
10,841
1983
8,830
1984
10,000
ABC was incorporated in Missouri in 1978 and is a successor corporation to a corporation of the same name incorporated in Arizona in 1971. The Arizona corporation, *554 but not the Missouri corporation, filed an exemption application with the Internal Revenue Service and was granted tax-exempt status pursuant to section 501(c)(3) as a religious organization. The founder of ABC is an individual named Gene Dagar who is also known as Darrell Randall and currently assumes the name of Mayaheett (hereinafter "Mayaheetee"). Mayaheetee moved to Kansas City, Missouri, in 1973 and thereafter enlisted three other individuals as members and directors of ABC: petitioner, Patricia Kinnaman ("Kinnaman"), and Donald Mays ("Mays"). Each of ABC's four members holds a title and has certain defined duties. Mayaheetee's title is "Church Don" and he is the "founder and religious leader of ABC." Kinnaman's title is "Secretary" and her duties include assisting Mayaheetee in organizing and typing his writings for future dissemination. Mays' title is "Caretaker" and his duties include "upkeep of the church property." Petitioner's title is "Church Servant" and his duties include "representation of the church, counseling and performing marriages." ABC has always been a non-congregational organization, has never held ritual religious services, and is not affiliated with *555 any church or religious organization. Before the years at issue, Mayaheetee ordained petitioner as a minister of ABC. Mayaheetee required no formal education or training as a prerequisite for the ordination, though petitioner did receive informal training from Mayaheetee through private discussions. In 1975, Mayaheetee was found guilty of possession of illegal drugs and was imprisoned at the Missouri State Penitentiary until his release in January, 1983. During these years, ABC sent writing materials, a typewriter, and money to him in prison. No records were kept of the amounts given him or how he spent the money, but part of the money was used to purchase food from other inmates for his personal consumption. [3] The writing materials and typewriter were used to transcribe what in his words would some day be known as the "Aquarian Gospels." He also maintained on behalf of ABC a ministry while in prison in the form of weekly meetings to teach inmates self-image and moral values. There are no records as to whether or how many inmates actually attended these meetings. *556 Other than his activities with ABC during the years involved, Mayaheetee was not employed and received all of his financial support from ABC. ABC received its support almost totally from purported donations to ABC by petitioner and Mays. Mayaheetee and Kinnaman had use of this donated money to pay their personal living expenses in addition to reimburse themselves for expenses which they deemed were incurred in furtherance of ABC's activities. [4]
In 1978, ABC purchased a house in Kansas City, Missouri, for $ 10,000 with a down payment of $ 500 and monthly mortgage payments of $ 160. The source of these payments was donations to ABC. During the years in issue, ABC's members resided in the house, Mayaheetee residing there only after his release from *557 prison. Mayaheetee and Kinnaman resided there rent-free. Mays paid rent and petitioner paid rent only after Mayaheetee was released from prison, reasoning that in Mayaheetee's absence, he, petitioner, was the resident minister and, as such, was entitled to a rent-free residence. During the years at issue, the source of payments for maintenance on this house including gas, electricity, and repairs came from funds donated to ABC. OPINION Petitioner argues that he is entitled to deduct amounts contributed to ABC during the years at issue as charitable contributions. Respondent argues that the requirements of section 170[5] were not satisfied, specifically, that petitioner has failed to prove that ABC was organized and operated exclusively for religious purposes and that no part of ABC's net earnings inured to the benefit of private individuals. Sec. 170(c)(2)(B) and (C). [6] Petitioner counters by arguing that any cash or in-kind benefit received by any member of ABC from net earnings of ABC did not represent impermissible private inurement but rather represented reasonable compensation for services rendered to ABC. *558 Deductions are a matter of legislative grace and petitioners must satisfy the specific statutory requirements of the deductions they claim. Deputy v. duPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The gist of the issue presented is whether any part of ABC's net earnings inured impermissibly to the benefit of its members or, in the alternative, if any private benefit was received by any member from ABC, whether that benefit represented permissible compensation for services rendered. Since "no part" of the net earnings of an organization may inure to the benefit of a private individual, the amount or extent of such inurement or benefit is not determinative. Church of Transfiguring Spirit, Inc. v. Commissioner,76 T.C. 1, 5 (1981). Sec. 170(c)(2)(C). To the extent that members of ABC are determined *559 to have received reasonable compensation for services rendered to ABC, such compensation would not constitute prohibited inurement. Bubbling Well Church v. Commissioner,74 T.C. 531, 537 (1980), affd. 670 F.2d 104 (9th Cir. 1981). Mayaheetee testified at trial that the personal living expenses of Kinnaman and himself were paid or reimbursed from money donated to ABC. At various times, Mayaheetee, Kinnaman and petitioner were provided by ABC with rent-free housing. ABC paid for the monthly mortgage payments, gas, electricity and repairs on the house. We therefore hold that members of ABC received benefits from the net earnings of ABC. As stated earlier, benefits are permissible if those benefits represent reasonable compensation for services actually rendered. We find that petitioner and Mayaheetee, who testified at trial that services were in fact rendered, lacked credibility. Even if we accept as true, as petitioner argues, that services were performed, we find that the value of those services fell far short of equaling or exceeding the value of the benefits received. Members of ABC received benefits based in large part, if not solely, on *560 their personal needs rather than as consideration for services rendered. Accordingly, we find that ABC's earnings inured to the benefit of private individuals and, therefore, that petitioner's contributions to ABC are not deductible. [7]
*561 Decision will be entered for the respondent.
Footnotes
1. At the trial, respondent conceded additions to tax under sections 6653(a)(1) and 6653(a)(2). Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For the 1982 taxable year, petitioner filed a Federal income tax return and claimed a deduction for a charitable contribution to ABC in the amount of $ 11,410; however, this year is not before the Court. ↩
3. Mayaheetee chose not to eat meals at the prison mess hall. He purchased his food on the prison black market. ↩
4. During the cross-examination of Mayaheetee, the following colloquy occurred: Q. Where did you get money to pay your personal living expenses? * * * A. THE WITNESS: From donations to the Church. * * * Q. Did the Church pay for the living expenses of any other member, Patricia Kinnaman? Was she provided money the way you were for food and other personal expenses? A. I believe so, during those years, yes sir. ↩
5. Section 170 provides in relevant part for the years at issue as follows: (a) * * * There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) * * * * * * (c) * * * the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund, or foundation -- * * * (B) organized and operated exclusively for religious * * * purposes * * * (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *. ↩
6. Respondent also argued that petitioner's contributions are not deductible because ABC never gave appropriate notice to the Internal Revenue Service that it was tax exempt and that contributions to it were tax deductible. See section 508(d)(2)(B) and 508(a). However, contributions to churches are deductible notwithstanding. See sec. 508(c). Since we decide this case on other grounds, we do not address the issue of whether ABC is in fact, as it claims, a church and thus not required to give such notice to the Internal Revenue Service. ↩
7. Since we find private inurement, we do not address respondent's second argument that petitioner's deductions should be disallowed on the basis that ABC failed to operate exclusively for religious purposes. But see Unitary Mission Church v. Commissioner,74 T.C. 507, 512 n.7 (1980), affd. without opinion 647 F.2d 163 (2d Cir. 1981), where this Court stated: We have previously commented that the separately stated private inurement prohibition is redundant to the requirement that an organization be operated exclusively for one or more exempt purpose since operating exclusively for an exempt purpose necessitates providing a public, and not private, benefit. See Western Catholic Church v. Commissioner,73 T.C. 196, 209 n.27 and cases cited therein, 213 (1979), [affd. in an unpublished order 631 F.2d 736 (7th Cir. 1981)]; sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.↩