The BIG MAMA RAG, INC., Plaintiff,

v.

The UNITED STATES of America, W. Michael Blumenthal, as Secretary of the Treasury, and Jerome Kurtz, as Commissioner of the Internal Revenue Service, Defendants.

Civ. A. No. 77–1649.

United States District Court, District of Columbia.

April 30, 1979.

---

Jeffery L. Yablon, Covington & Burling, Washington, D. C., for plaintiff.

Michael J. Kearns, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

SIRICA, District Judge.

The sole issue before the Court for review in this case is whether or not plaintiff Big Mama Rag, Inc. (BMR), qualifies as a tax-exempt organization under the terms of 26 U.S.C. § 501(c)(3) (1976). Plaintiff seeks a declaration of its tax-exempt status under the provisions of 26 U.S.C. § 7428 (1976), a recently enacted statute which provides for determination of the tax-exempt status *vel non* of an organization by means of a declaratory judgment action. The cause is now before the Court on cross-motions for summary judgment; there are no issues of contested fact.

*Scope of Review*

Although section 7428 itself does not enunciate the standard or scope of review to be employed by the district court in examining the Internal Revenue Service's (IRS) decision, analysis of the legislative history and of tax court practice in section 7428 cases indicates that the court is to review the decision *de novo*.[1] In most cases involving an initial determination of eligi-

---

1. Congress granted the U. S. Tax Court and the U. S. Court of Claims concurrent jurisdiction with the U. S. District Court for the District of Columbia over cases arising under section 7428. 26 U.S.C. § 7428(a) (1976). In doing so it suggested that the other two courts accord special weight to Tax Court precedents in this area, since the Tax Court had already promulgated rules for declaratory judgment suits under 26 U.S.C. § 7426 (1976), involving the qualification of retirement plans. H.R.Rep. No. 658, 94th Cong., 1st Sess. 285 (1975) U.S.Code Cong. & Admin.News 1976, p. 2897 (hereinafter cited as House Report). Both the House and

bility for tax exemption, however, the court need not consider any evidence other than the administrative record.[2] This is not to say that the court is prevented from considering additional evidence, but in doing so it must be cognizant of the specific requirement of the statute that the plaintiff have exhausted its administrative remedies. 26 U.S.C. § 7428(b)(2) (1976).[3]

In this case both parties have stipulated that the facts are as they appear in the administrative record. In addition, although they disagree as to whether or not it is part of the administrative record, both parties agree that the Court should consider the conference memorandum prepared by the IRS staff after the September 7, 1976, hearing for plaintiff at the IRS national office. The Court finds that there is good cause for including this memorandum in the record, and therefore will consider it in reaching its decision.

*Facts*

Plaintiff is a feminist organization whose major efforts are directed toward producing a monthly newspaper, *The Big Mama Rag*, dealing with issues of concern to women. Plaintiff is organized under the Colorado nonprofit corporation act and seeks a declaration that it is a charitable and educational organization within the terms of Internal Revenue Code (IRC) § 501(c)(3), and thus that it is exempt from tax under IRS § 501(a) and, more important, that contributions to it are tax deductible under IRC § 170(a) and 170(c)(2). The IRS denied tax exempt status to BMR on October 17, 1974, and again on June 24, 1977, after plaintiff protested the earlier adverse ruling. Plaintiff has exhausted its administrative remedies.

BMR has, with two unimportant exceptions, an all volunteer staff and distributes without charge 2,100 of its 2,700 monthly copies. Administrative Record (Rec.), Tab 10 at 2. The remaining 600 are sold at competitive rates. Over 50 percent of the newspaper's income is derived from contributions, grants, and benefits, Rec., Tab 11,

Senate Reports also suggested that, insofar as is practicable, the Tax Court burden of proof rules be adopted. House Report, *supra*, at 285–286; S.Rep. No. 938, 94th Cong., 2d Sess. 588 U.S.Code Cong. & Admin.News 1976, p. 2897 (1976) (hereinafter cited as Senate Report).

The Tax Court rules for section 7428 proceedings indicate that in the majority of cases the court's function will be to determine solely on the basis of the administrative record whether or not the Internal Revenue Service determination was correct. Tax Court Rule 217(a) and Advisory Committee Note; Tax Court Rule 210(b)(10) (content of administrative record); *see Houston Lawyer Referral Service v. Comm'r*, 69 T.C. 570, 573 (1978) (focus of section 7428 is on review of IRS determination only). The legislative history of section 7428 contemplates that the courts will reach their decisions on the basis of the arguments presented to the IRS by both parties and on any additional argument the IRS may wish to make to the court. House Report, *supra* at 285.

Thus, while the review is *de novo*, it will be only in unusual cases, *e. g.*, where the IRS has revoked a determination of tax exemption, where the content of the administrative record is in dispute, or where there is a dispute as to jurisdictional facts, that a trial will be necessary. See Advisory Committee Note to Tax Court Rule 217. While other evidence may be introduced under the Tax Court scheme, it may be introduced only if good cause is shown. Tax Court Rule 217(a).

The Tax Court scheme for section 7428 cases has been adopted in this court in *Southwest Virginia Professional Standards Review Organization, Inc. v. United States*, Civil Action No. 77–1691, 78–2 U.S.Tax Cas. (CCH) ¶ 9747 (Oct. 13, 1978) (Green, J.), and by the trial division of the Court of Claims in *Animal Protection Institute, Inc. v. United States*, No. 609–77, 78–2 U.S.Tax Cas. (CCH) ¶ 9709 (Sept. 19, 1978) (Miller, J.).

**2.** *See* note 1, *supra*.

**3.** To meet this requirement, the organization must have satisfied "all appropriate procedural requirements of the Service. For example, the Service may decline to make a determination if the organization fails to comply with a reasonable request by the Service to supply the necessary information on which to make a determination." Senate Report, *supra* note 1, at 590, U.S.Code Cong. & Admin.News 1976, at 4014; *accord*, House Report, *supra* note 1, at 287. From this it follows that, if the Service had requested the plaintiff to supply all necessary information, the plaintiff is foreclosed by the exhaustion requirement from later introducing evidence before the district court that could have been produced at the time of the Service's request, but was not.

at 7; the remainder comes from subscriptions and advertising revenue. Although advertising is carried, it is limited to a maximum of 20 percent of total content (and presently constitutes about 10 percent of the total) and is restricted to advertising of goods and services that are of particular interest to women. *Id.*

The editorial stance of the newspaper is that it will print anything that will advance the cause of the women's movement; it refuses to publish material it considers damaging to that cause. *Big Mama Rag,* Vol. 1, No. 3, at 2, Col. 2. BMR, Inc., devotes a considerable minority of its time to promoting women's rights through workshops, seminars, and lectures of interest to women. Rec., Tab 10, at 4.

*Discussion*

In order to qualify for tax-exempt status, an organization must be organized exclusively for one or more of the following purposes: religious, charitable, scientific, testing for public safety, literary, educational, or to foster national or international sports competition, or for prevention of cruelty to children or animals. I.R.C. § 501(c)(3); Treas.Reg. § 1.501(c)(3)–1(d)(1). In addition, it must serve a public, rather than a private, interest. The term "exclusively" in the statute and regulations has been interpreted by the Supreme Court to mean that the organization has as its "primary" activity the performance of exempt functions. *Better Business Bureau of Washington, D.C. v. United States,* 326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67 (1945); *accord Consumer Credit Counseling Service of Alabama, Inc. v. United States,* C.A. No. 78–0081, 78–2 U.S.Tax Cas. (CCH) ¶ 9660 (D.D.C. August 18, 1978); Treas.Reg. § 1.501(c)(3)–1(c)(1). BMR, Inc., has sought tax-exempt status primarily as an educational organization, although it has also argued that it may be considered a charitable organization as well. Rec., Tab 11, at 2.

The government advances two principal grounds for refusing to issue plaintiff a determination of tax-exempt status: first, that the content of the newspaper is not educational, nor is the material prepared in a manner generally accepted as educational in character; and, second, that the manner in which the newspaper is operated and distributed cannot be distinguished from ordinary commercial publishing practices.

In addition to responding to these arguments on the merits, plaintiff has argued that if BMR is found not to meet the regulations' definition of "charitable or educational," then the regulations must be struck down as offensive to the first amendment to the United States Constitution. Plaintiff contends that allowing the IRS such latitude in determining what organization should be granted and what organization denied tax-exempt status confers on it the power to regulate the content of speech, and that this is impermissible under the first amendment.[4]

Before reaching the government's argument that the content of the newspaper is not educational, the Court will note briefly that it finds the contention that BMR is operated and distributed in a manner indistinguishable from ordinary commercial publishing practices to be wholly without merit. The administrative record clearly establishes: (1) that BMR is not designed or intended to make a profit, Rec., Tab 11, at 10, although it does hope to become self-supporting; (2) that it is currently operating with a nearly all-volunteer staff, Rec., Tab 10, at 2; (3) that 2,100 of the 2,700 copies of the newspaper distributed per issue are distributed free, Rec., Tab 10, at 2; (4) that BMR, Inc., devotes a substantial minority of its time to promoting women's rights through workshops, seminars, and lectures of interest to women, Rec., Tab 10, at 4; (5) that it operates a free library, Rec., Tab 10,

---

**4.** Plaintiff also has argued that, for purposes of comparison, the Court should consider a publication by the name of *Quest: A Feminist Quarterly,* which has been granted tax-exempt status in a private letter ruling. The government opposes this on the ground that the tax-exempt status of *Quest* is irrelevant. Since there are adequate bases for comparison with similar publications discussed in published revenue rulings, the Court will not address this question.

at 3; (6) and that over 50 percent of its income comes from contributions, grants, and benefits, Rec., Tab 11, at 7. In fact, other than on the most superficial level, there are very few planes upon which BMR can be likened to a commercial operation. Therefore the Court concludes that BMR is prepared in a manner distinguishable from ordinary commercial publishing practices.

The government's primary argument, that BMR is not educational in content or preparation, is more convincing, however. The applicable standard for deciding this question is found in Treas.Reg. § 1.501(c)(3)–1(d)(3):

> (3) *Educational defined* —(i) *In general.* The term "educational," as used in section 501(c)(3), relates to—
>
> (a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or
>
> (b) The instruction of the public on subjects useful to the individual and beneficial to the community.
>
> An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an organization is not educational if its principal function is the mere presentation of unsupported opinion.

In addition to the general standard in the above regulation, the IRS has developed a specific test for publications which profess to be educational. This test is set out in Revenue Ruling 67–4, 1967–1 C.B. 121, and is as follows:

> A publication may qualify if:
>
> (1) the content of the publication is educational; (2) the preparation of material follows methods generally accepted as "educational" in character; (3) the distribution of the materials is necessary or valuable in achieving the organization's educational and scientific purposes; and (4) the manner in which the distribution is accomplished is distinguishable from ordinary commercial publishing practices.

The test, as first applied, related specifically to scientific publications, but its application was later broadened to apply to other publishing ventures. *See, e.g.,* Rev.Rul. 77–4, 1977–1 C.B. 141.

The IRS argues both that BMR does not meet the special criteria of Rev.Rul. 67–4, and that in any event it does not present a "full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion," as is required by Treas.Reg. § 1.501(c)(3)–1(d)(3)(i)(b). In support of its argument, the government notes BMR refuses to publish material that opposes its viewpoint. This policy of censorship is clearly stated in a lengthy editorial in a September 1976 edition of BMR which purports to set out the "paper's definition, goals, process, and politics."

> We retain the right to censor all copy (including advertisements) submitted to the paper. As feminists in the process of developing a political analysis, we must adopt certain values and reject others. By "censorship" we mean that we will not print any material which, by our judgment, does not affirm our struggle. We will not act to prevent the dissemination of such material via means other than *Big Mama Rag.*

*Big Mama Rag,* Vol. 4, No. 8, at 4, Col. 2.

In addition to its policy of censorship, the government adds, BMR publishes many articles which present unsupported opinion, innuendo, and use inflammatory and disparaging language. Memorandum in Support of Defendant's Cross-Motion for Summary Judgment at 8 (citing several articles in support of its argument). Finally, the government argues that BMR's commitment to and advocacy of revolution, as opposed to reform, demonstrates that it does not instruct the public on subjects useful to the community. *Id.* at 10.

Plaintiff's rejoinder is that Treas.Reg. § 1.501(c)(3)–1(d)(3)(i) does not require the presentation of all opposing points of view, noting that "an organization dedicated to the eradication of racism need [not] present

**478**

the views of the Klu Klux Klan, [nor need] a religious publication make the case for atheism."  In addition it argues that the articles selected by the government to support its "unsupported opinion" argument were unrepresentative of BMR as a whole and, in any event, did not consist principally of innuendo or unsupported opinion.  In its Memorandum in Support of its Motion for Summary Declaratory Judgment, at 15, plaintiff also cites Treas.Reg. § 1.501(c)(3)–1(d)(2):

> The fact that an organization, in carrying out its primary purpose, advocates social or civic changes or presents opinion on controversial issues with the intention of molding public opinion or creating public sentiment to an acceptance of its view does not preclude such organization from qualifying under section 501(c)(3) so long as it is not an 'action' organization . . . .

Plaintiff's analysis is incorrect, however, because it fails to distinguish between organizations which are both charitable *and* educational and organizations which are charitable but not educational.  The above-cited regulation applies to charitable organizations in contradistinction to educational organizations, which are governed by the more stringent "full and fair exposition" standard of Treas.Reg. § 1.501(c)(3)–1(d)(3)(i).[5]  The same holds for plaintiff's argument that a religious publication need not make the case for atheism.  While this is true, it is true because the full and fair exposition standard applies only to educational organizations, not religious ones.  (And in fact, even if the full and fair expo-

sition standard did apply, it would require only that the facts be presented in such a way that a reasonable person could draw a different conclusion, not that a religious organization "make the case" for atheism.)

Plaintiff's failure to recognize this distinction is evident in its analysis of Revenue Ruling 68–306, 1968–1 C.B. 257, which discusses a religious newspaper.  Plaintiff alleges that the IRS found that the publication was educational, Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgment, at 7, but in fact, nowhere in the revenue ruling is the word educational used; instead the IRS ruled that "the term 'charitable' as used in section 501(c)(3) of the Code includes the 'advancement of religion' " and that "therefore the organization is accomplishing a charitable purpose by contributing to the advancement of religion" and accordingly is tax-exempt.

Plaintiff may not rely, then, on the less stringent standard for charitable organizations in seeking tax exemption on the ground primarily that it is educational.  Consequently, it must meet the demands of the "full and fair exposition" standard.

■  The Court concludes that BMR does not meet the requirements of this standard, and, thus, that it is not an educational organization within the meaning of Treas. Reg. § 1.501(c)(3)–1(d)(3).  While the Court does not find it objectionable that the publication is outside the mainstream of political

---

5.  While Congress has chosen not to define the terms "charitable" and "educational" with specificity, it is evident from the regulations and the case law in the tax-exempt organization area that an educational organization is, and indeed must be, charitable, in the broad legal sense of the word.  *See Green v. Connally*, 330 F.Supp. 1150, 1157–60 (D.D.C.), *aff'd per curiam sub nom. Coit v. Green*, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971).  This causes some semantic confusion when it comes to the question of which standard to apply in determining whether an organization seeking exemption as educational qualifies.  Must the organization meet the strict "full and fair exposition" standard for educational organizations,

or may it be measured against the less stringent standard for charitable organizations?  When "the sole basis for charitable exemption is service to education," the answer is that the stricter standard must apply.  *San Francisco Infant School, Inc. v. Comm'r*, 69 T.C. 957, 963–64 n. 5 (1978).  To hold otherwise would render meaningless the Treasury Department's promulgation of a stricter standard for educational organizations.  Of course, if the organization falls *wholly* within one of the other charitable categories, such as those for advancement of religion, relief of the poor, social welfare, etc., then it need meet only the more general standard.  *See* Treas.Reg. § 1.501(c)(3)–1(d)(2).

thought in this country,[6] the organization has chosen to present its views as an advocate and has eschewed a policy of presenting a "full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion." Treas.Reg. § 1.501(c)(3)–1(d)(3)(i)(b). This is not to say that a publication may not advocate a particular point of view and still be educational, or that it must necessarily present views inimical to its philosophy, only that in doing so it must be sufficiently dispassionate as to provide its readers with the factual basis from which they may draw independent conclusions. *See* Rev.Rul. 68–263, 1968–1 C.B. 256. BMR, as an examination of the copies of the paper contained in the administrative record reveals, has adopted a stance so doctrinaire that it cannot satisfy this standard.

BMR also argues that the "full and fair exposition" standard of Treas.Reg. § 1.501(c)(3)–1(d)(3)(i) is offensive to the first amendment, and that therefore the regulation must be invalidated on constitutional grounds. The regulation, it asserts, permits the IRS to inquire into and regulate the content of speech. Plaintiff points to the potential for abuse inherent in such a regulation, particularly the possibility that the IRS will use it to discriminate against organizations representing controversial viewpoints. Plaintiff's Memorandum in Support of its Motion for Summary Declaratory Judgment, at 17.

■ The Court agrees that if this regulation were intended to allow, or resulted in allowing, the IRS to censor views with which it did not agree, it would be constitutionally invalid. It is quite clear that the mere fact that tax exemptions are a matter of legislative grace does not entitle Congress, or regulating agencies, to condition their grant on conformance to a certain pattern of thought or belief. *Speiser v. Randall*, 357 U.S. 513, 518, 78 S.Ct. 1332, 1338, 2 L.Ed.2d 1460 (1958). *See Grosjean*

*v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936). To permit that would do violence to our fundamental belief in the sanctity of free speech, since there is no question that discriminatory denial of a benefit, *e. g.*, the second class mailing privilege where publications are concerned, can be just as inhibitive of free speech as the imposition of a penalty, *e. g.*, a direct tax on certain types of speech.

■ There is no requirement, however, that Congress subsidize free speech. *Cammarano v. United States*, 358 U.S. 498, 515, 79 S.Ct. 524, 534, 3 L.Ed.2d 462 (1959) (Douglas, J., concurring); *Hannegan v. Esquire*, 327 U.S. 146, 160, 66 S.Ct. 456, 463, 90 L.Ed. 586 (1946) (Frankfurter, J., concurring). Congress is free to grant tax exemptions to certain classes of organizations and refuse them to others as long as the purpose or effect of the refusal is not to discriminate against those with controversial views or beliefs. *Cammarano, supra*, 358 U.S., at 513, 514, 79 S.Ct., at 534; *Hannegan, supra*, 327 U.S., at 151, 66 S.Ct., at 459. *See Grosjean, supra*, 297 U.S., at 250–51, 56 S.Ct., at 449; *Haswell v. United States*, 500 F.2d 1133, 1148 (Ct.Cl.1974).

In *Cammarano* the plaintiffs challenged the right of Congress to deny a business expense deduction for lobbying activities, arguing that to do so infringed on their first amendment rights. Justice Douglas, concurring, wrote:

> Deductions are a matter of grace, not of right. . . . To hold that this item of expense must be allowed as a deduction would be to give impetus to the view favored in some quarters that first amendment rights must be protected by tax exemptions. But that proposition savors of the notion that first amendment rights are somehow not fully realized unless they are subsidized by the State. Such a notion runs counter to our decisions . . . and may indeed conflict with the underlying premise that a complete hands-off policy on the part of

---

**6.** The Court rejects the government's argument that BMR fails to qualify for tax exemption because it does not instruct the public on subjects useful to the community. In the context

of the government's argument, such a standard would be far too subjective in its application to pass constitutional muster.

government is at times the only course consistent with First Amendment rights. *Cammarano, supra,* 358 U.S., at 515, 79 S.Ct., at 534–35.

■ Thus, Congress is free to define the requirements to be met by tax-exempt organizations as narrowly as it wishes, as long as the purpose or effect of that definition is not to discriminate on the basis of the content of speech. There is no indication in this case, and plaintiff does not appear to argue, that Congress or the Department of the Treasury *intended* to discriminate against those with controversial views in defining the requirements for tax exemption. Consequently, the question to be discussed is whether the regulation is discriminatory in its *effect.* Plaintiff argues that it is, pointing out that the "full and fair exposition" standard is vague and subjective and provides a great potential for abuse.[7] The Court does not agree.

The Treasury, in promulgating this regulation, faced a difficult problem, since the term "educational," in its broadest sense, encompasses almost any dissemination of information, be it advertising or philosophical exposition. In order to effectuate congressional intent, the Treasury narrowed the scope of the term by requiring that any organization seeking tax exemption as educational be minimally objective in its presentation of its views, even though it advocates a particular point of view. Thus, the organization must present the pertinent facts underlying its conclusions in such a way that a person reading or hearing them can draw an independent conclusion. The Treasury accomplished this by including the "full and fair exposition standard" in the regulation.

This standard is certainly capable of objective application—it does not ask the IRS to determine whether or not the views expressed are worthy or correct. Instead, it asks only whether the facts underlying the conclusions are stated. And perhaps equally important, if the IRS were attempting to apply the standard discriminatorily, it would be an easy task for a court to evaluate whether or not the standard had been properly applied.

In this case plaintiff implies that the IRS may have denied it tax-exempt status because of the IRS's view that BMR, Inc., is a homosexual organization, *see* note 7, *supra,* and because it takes controversial positions on matters dealing with homosexuality. Because the "full and fair exposition" standard is vague and subjective, plaintiff suggests, the IRS has been able to mask its improper motives with a legally acceptable rationale.

If plaintiff is arguing that the standard was improperly applied in its case, and that because of the vagueness of the standard the misapplication is difficult to discern, it is wrong. The Court has carefully reviewed the IRS's determination and finds that it was a correct application of the standard. If plaintiff is arguing that it has been harmed by selective enforcement of the regulation aimed at controversial organizations, again its argument fails. Plaintiff itself has been careful to note that the IRS has granted tax-exempt status to other organizations similar in their viewpoint to BMR. *See* Plaintiff's Reply Memorandum, at 23. And the possibility that the IRS may have an unstated policy of refusing tax exemption to homosexual organizations is refuted by Rev.Rul. 78–305, 1978–33 I.R.B. 10. There the "full and fair exposition" standard was applied in granting tax exemption to a nonprofit organization formed to educate the public about homosexuals in order to foster understanding of them and

---

7. Plaintiff emphasizes that it was informed by IRS officials at the Technical Advice Conference on September 7, 1976, that one of the reasons it was denied tax-exempt status was that BMR was engaged in "promoting lesbianism." Plaintiff's Memorandum in Support of its Motion for Summary Declaratory Judgment, at 19; Plaintiff's Reply Memorandum, at 26. *See* Rec., Exhibit D. The IRS argues that it never adopted that view, expressly disavowing any reliance on it. In support of its position it notes that the Technical Advice Memorandum directly resulting from that conference did not adopt that position. Defendant's Memorandum in Support of its Cross-Motion for Summary Judgment, at 3.

On reviewing the record, the Court finds no indication that the IRS adopted such a position, despite the unfortunate comments of its officials at that meeting.

their problems. The IRS noted in its ruling that:

The organization accumulates factual information through the use of opinion polls and independently compiled statistical data from research groups and clinical organizations. All materials disseminated by the organization contain a full documentation of the facts relied upon to support conclusions contained therein.

Thus, it appears to the Court that: (1) the standard is facially valid; (2) the standard was properly applied in this case; and (3) the standard is not, as a matter of unwritten policy, used to discriminate against organizations the IRS knows, or suspects to be, homosexual in outlook. Plaintiff has simply failed to meet the legal requirements for qualification as a tax-exempt organization.

Based on the foregoing analysis, then, the Court is compelled to conclude that BMR, Inc., is not an organization qualifying for tax exemption under the terms of section 501(c)(3), and that, hence, it is not tax-exempt under section 501(a), nor are contributions to it deductible under sections 170(a) and 170(c)(2). Accordingly, the Court denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment. Judgment will be entered accordingly.