**FREEDOM CHURCH OF REVELATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 82–3675.

United States District Court, District of Columbia.

April 26, 1984.

Charles McNelis, Washington, D.C., for plaintiff.

Robert L. Gordon, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

In this action, plaintiff seeks a declaratory judgment pursuant to 26 U.S.C. § 7428 that it continues to qualify as an exempt organization under section 501(c)(3) of the Internal Revenue Code of 1954 ("Code"), 26 U.S.C. § 501(c)(3). This matter is before the Court on the trial memorandum of the United States of America, the affidavits and documents submitted by plaintiff and its members, and the entire record herein, including the administrative record. For the reasons stated below, the Court revokes retroactively the exempt status of plaintiff, effective for all tax years beginning with 1978.

## FINDINGS OF FACT

On March 8, 1979, plaintiff Freedom Church of Revelation ("Freedom Church") applied for recognition as a tax-exempt organization pursuant to section 501(c)(3) of the Code. Administrative Record ("A.R."), Internal Revenue Service ("IRS") Form 1023. On June 8, 1979, the Commissioner of IRS determined that plaintiff was exempt under section 501(c)(3), based upon information supplied by plaintiff in its application for recognition of exemption, as well as the assumption that plaintiff would operate in the manner it had represented in its application. Exhibit A attached to Complaint.

On October 14, 1979, following an examination of plaintiff's operations, the IRS informed plaintiff that it was proposing to revoke plaintiff's exemption under section 501(c)(3). Plaintiff appealed this proposed revocation to the IRS. On September 30, 1982, plaintiff received a final determination that its recognition as a tax-exempt organization under section 501(c)(3) had been revoked, effective for the tax year 1978 and all subsequent years. Exhibit B attached to Complaint.

In revoking the tax-exempt status of plaintiff, the IRS gave the following reasons:

1. You are not organized and operated exclusively for religious, charitable, educational or any other § 501(c)(3) purpose.

2. You are not organized and operated exclusively for public purposes.

3. You are operated for the benefit of private individuals.

*Id.*

As a result of this decision, on December 28, 1982, plaintiff filed the instant action

under the declaratory judgment provisions of 26 U.S.C. § 7428. At a status conference on April 18, 1983, plaintiff's counsel informed the Court that Freedom Church wished to supplement the administrative record in this case and that it would move to reopen the administrative record for this purpose. At a subsequent status conference on July 5, 1983, however, the Court was informed that plaintiff had not moved to reopen the administrative record and had not submitted any additional documents to the IRS. As a result, the Court indicated that any documents plaintiff wished to include in the administrative record would have to be submitted to the IRS by July 19, 1983. On July 19, 1983, a letter and exhibits were delivered to IRS. After examining these additional documents, the IRS concluded that there was no basis to disturb its original determination that plaintiff's tax-exempt status should be revoked.

In lieu of trial in this matter, the parties agreed to submit their respective cases on the papers. Plaintiff was given an opportunity to submit any. additional briefing or documents to the Court on or before November 23, 1983, and the Government was given the opportunity to respond to plaintiff's submissions and to submit its own papers on or before November 30, 1983. Thereafter, the leaders and members of Freedom Church submitted affidavits and letters, a cassette entitled "Faith" by Bishop Linda Jane Ann, and various publications of the church, including copies of the *Fellowship News*. In response, the Government submitted a trial memorandum, the administrative record, and supplemental exhibits.

## CONCLUSIONS OF LAW

Section 501(a) of the Code exempts certain organizations from taxation, including those organizations described in Section 501(c)(3) as follows:

Corporations ... organized and operated exclusively for religious, charitable, scientific ... or educational purposes ... no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation ... and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

26 U.S.C. § 501(c)(3).

Section 7428(a) of the Code states in relevant part:

(a) *Creation of remedy.*—In the case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

\*    \*    \*    \*    \*    \*

upon the filing of an appropriate pleading, the United States Tax Court, the United States Claims Court, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification .... Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification or continuing classification includes any revocation of or other change in a qualification or classification.

26 U.S.C. § 7428(a).

At the outset, the Court notes that an action brought by an organization under section 7428(a), challenging revocation of its existing section 501(c)(3) recognition, is a *de novo* proceeding in which neither the parties nor the Court is limited to the administrative record. *Incorporated Trustees of the Gospel Worker Society v.*

*United States*, 510 F.Supp. 374, 377 n. 6 (D.D.C.), *aff'd without published opinion*, 672 F.2d 894 (D.C.Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982) (case citation omitted). The burden of proof is on the organization to overcome the grounds set forth in the IRS' revocation letter. *Id.* (case citation omitted); *Basic Unit Ministry of Alma Karl Schurig v. United States*, 511 F.Supp. 166, 168 (D.D.C.1981) (case citation omitted).

■ To qualify as an exempt organization under section 501(c)(3), plaintiff must prove (1) that it is "operated exclusively" for tax-exempt purposes and (2) that no part of its net earnings inured to the benefit of any private individual. *Harding Hospital, Inc. v. United States*, 505 F.2d 1068, 1072 (6th Cir.1974).

With regard to the first requirement of section 501(c)(3), *i.e.*, that an organization must be operated exclusively for an exempt purpose, the applicable regulations state as follows:

> (c) *Operational test*—(1) *Primary activities.* An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). *An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.*

26 C.F.R. § 1.501(c)(3)-1(c)(1) (emphasis added).

■ Therefore, if the nonexempt activities of plaintiff are more than incidental or insubstantial, it is not entitled to continuing qualification as an exempt organization. *See Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945) ("[T]he presence of a single noneducational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes."); *Stevens Bros. Foundation, Inc. v. Commissioner of Internal Revenue*, 324 F.2d 633, 638 (8th Cir.1963), *cert. denied*, 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84 (1964) ("[I]f there is present in [an organization's] operations a single noncharitable purpose substantial in nature, though it may have other truly and important charitable purposes, it is not entitled to be exempt.").

■ The Court has examined the entire record in this action, including all of the material submitted by plaintiff. The documents, affidavits and letters submitted by plaintiff's leaders and members do not establish that plaintiff operated exclusively for religious, charitable or educational purposes. Plaintiff has failed to provide any financial records to buttress its claims that it is organized primarily for exempt purposes under section 501(c)(3). Moreover, the United States has presented evidence, which has not been refuted, that a substantial activity engaged in by plaintiff was the promotion of tax-avoidance schemes.

The Declarations of Prince L. Davis, a former high official of Freedom Church, and Charles L. Henry, a former "minister" of Freedom Church, submitted as two of defendant's supplemental exhibits, indicate that they became aware of Freedom Church by attending a seminar conducted by Dorothy Turner, a Director of Freedom Church, and Ruben Jiggetts, the avowed Bishop of Freedom Church for the Washington metropolitan area. These seminars were advertised as a way for people to reduce their tax liability legally by approximately seventy to 100 percent. Individuals who attended these seminars were told that they could obtain ministers' credentials by donating $4,100 to Freedom Church. A donation of $3,600 was acceptable if individuals joined within ten days of the seminar. It was strongly suggested that this donation be made in cash. They also were told that once an individual became a minister he could reduce his tax liability legally by:

> open[ing] a bank account in the name of Freedom Church of Revelation using a charter number that would be contained in the "letter of direction," and could "donate" 50% of his income to this ac-

count, deducting this 50% of his income on his Federal income tax return as a charitable contribution. Ms. Turner outlined how the "minister" could then use the funds in this account as a "parsonage allowance" for personal expenses, such as mortgage, rent, interest, taxes, utilities, and all the other items set forth in the left-hand side of the chart in Exhibit 2, and could also use the funds in this account for such items as investments, automobiles, insurance, and all the other items in the right-hand side of the chart in Exhibit 2. The "Freedom or Control?" flyer which constitutes the front page of Exhibit 2 was one of the slides presented at the seminar. Among the other slides was a slide of the original letter of determination from the Internal Revenue Service stating that Freedom Church of Revelation was tax-exempt, and a slide containing a portion of the text of Section 170 of the Internal Revenue Code.

Ms. Turner stated at the seminar that all "ministers" were required to send 1% of all funds passing through their "church" bank accounts to the Freedom Church of Revelation office in Boca Raton, Florida.

Declaration of Prince L. Davis at ¶¶ 5, 7–8 and Exhibits 1, 2 (executed Nov. 29, 1983) ("Davis Declaration"); *see also* Declaration of Charles L. Henry at ¶¶ 5, 7–8 and Exhibits 1, 2 (executed Nov. 29, 1983) ("Henry Declaration").

The documentary evidence submitted by plaintiff verifies the existence of a substantial nonexempt purpose, *i.e.*, tax avoidance. The "Congregational Management Guidebook," submitted to the Government by plaintiff on July 19, 1983, includes a sample filled-in IRS form, a reprinted IRS publication on valuing donated property, and advice on avoiding social security taxes, state sales taxes and Federal income taxes. A.R., Exhibit B ("Guidebook") at 21, 22, 51–58, 62. Moreover, Mr. Henry and Mr. Davis bought a booklet and chart at the seminar they attended which corroborate their declarations as to the principal nature of plaintiff's activities. Davis Declaration

at ¶ 6; Henry Declaration at ¶ 6. The Court also notes that:

> At no time during [the] seminar[s] [attended by Mr. Davis and Mr. Henry] did Ms. Turner or Mr. Jiggetts ever mention anything relating to a specific religion, or church worship services, or any actual charitable acts that the "church" or its "ministers" could perform. Ms. Turner stated that Freedom Church of Revelation was a non-denominational church, and that all "ministers" were free to believe whatever they wanted, and to continue to belong to any other churches or religious organizations.

Davis Declaration at ¶ 9; Henry Declaration at ¶ 9.

The fact that plaintiff has shown independently that it did engage in some charitable work, such as distributing food to the needy, donating $1,000 to Providence House/Willingboro Shelter, a refuge for battered wives and abused children, and donating clothing and money to the Staten Island Development Center, is not enough to entitle plaintiff to continued recognition as an exempt organization. Section 501(c)(3) clearly states that an organization must be operating *exclusively* for religious, charitable, educational or other exempt purposes. Tax avoidance schemes do not qualify as "other exempt purposes." Because more than an insubstantial part of its activities is not in furtherance of an exempt purpose, plaintiff has not met the "operational test" set forth at 26 C.F.R. § 1.501(c)(3)–1(c)(1).

Therefore, the Court finds that plaintiff has failed to meet the first requirement of section 501(c)(3) that it be "operated exclusively" for one or more exempt purposes.

Even assuming *arguendo* that plaintiff did meet its burden of proving that it is "operated exclusively" for an exempt purpose, plaintiff fails to meet the second requirement of section 501(c)(3), *i.e.*, that its assets do not inure to the private benefit of private shareholders or individuals. *See* 26 C.F.R. § 1.501(c)(3)–1(c)(2). A " 'private shareholder or individual' refer[s] to persons having a personal and private interest

in the activities of the organization[,]'' and includes the creator of the organization and his family. 26 C.F.R. §§ 1.501(a)–1(c); 1–501(c)(3)–1(d)(1)(ii). The requirement that there be no private inurement overlaps the requirement that an organization must operate exclusively for exempt purposes. Clearly, if part of an organization's earnings inure to the benefit of private individuals, the organization cannot be operating exclusively for exempt purposes. *Church of the Transfiguring Spirit, Inc. v. Commissioner of Internal Revenue,* 76 T.C. 1 (1981); *Unitary Mission Church of Long Island v. Commissioner of Internal Revenue,* 74 T.C. 507, 512 n. 7 (1980), *aff'd without published opinion,* 647 F.2d 163 (2d Cir.1981).

The Court must determine whether any individuals benefit financially in a private capacity from the operation of Freedom Church. *See Founding Church of Scientology v. United States,* 412 F.2d 1197, 1200, 188 Ct.Cl. 490 (1969), *cert. denied,* 397 U.S. 1009, 90 S.Ct. 1237, 25 L.Ed.2d 422 (1970). The amount or extent of the inurement or benefit is not relevant. If any portion of the organization's net earnings inures to the benefit of a private individual, the organization cannot meet the second requirement of section 501(c)(3). *Id.; Church of the Transfiguring Spirit, Inc. v. Commissioner of Internal Revenue,* 76 T.C. at 3.

In the instant case, plaintiff has failed to carry its burden of establishing that its earnings did not inure to private individuals. Freedom Church has failed to provide any information on its operation and finances. It has failed to respond to the Davis and Henry Declarations; to explain what happened to the initial ''donations'' of $3,600 to $4,100 collected from each individual who decided to become a minister; to explain what happened to the one percent (now two percent) of all church accounts collected from each minister; or to explain what happened to the $250 fees collected from each ''missionary.'' *See* Davis Declaration at ¶¶ 5, 8, 12; Henry Declaration at ¶¶ 5, 8, 13; Guidebook at 43. Freedom Church has failed to state specifically how it uses this money or even that this money is used by the organization rather than by individual members of Freedom Church. Instead, the record is replete with very general statements by plaintiff's leaders and members extolling its religious, charitable, and educational activities.

In a similar case, *Basic Unit Ministry of Alma Karl Schurig v. United States,* the court stated in pertinent part:

> In factual situations such as [these], where there is evident potential for abuse of the exemption provisions and avoidance of taxes, plaintiff must openly and candidly disclose all facts bearing upon the operation and the finances of the organization. *Bubbling Well Church v. Commissioner,* 74 T.C. 531, 535 (1980). That has not been done. Plaintiff did not proffer sufficiently detailed evidence as to the nature of the charitable disbursements, or as to the extent of the maintenance and support of the members. The services which plaintiff claims its members performed for it are characterized more by generalizations than specifics.

511 F.Supp. at 168.

Although the Court recognizes that some of the members and officials of Freedom Church have submitted letters, affidavits, and documents describing some of the religious, charitable, and educational activities engaged in by plaintiff, as in *Basic Unit Ministry,* plaintiff has failed to provide sufficiently detailed evidence as to the nature of the charitable disbursements and more importantly, the extent of the maintenance and support of its members. *See id.* The information submitted by plaintiff is not enough to demonstrate positively that a portion of its earnings did not inure to private individuals.

The record also indicates that in July 1980, a Special Agent of the IRS issued administrative summonses to several banks and other institutions in New Jersey, seeking records of accounts in the names of several organizations, including Freedom Church of Revelation, over which Francis

John Conti, the founder and overall leader of Freedom Church, or his wife, Marie Conti, had signatory authority. *See* Defendant's Supplemental Exhibits 3a and 3b. Mr. Conti stayed compliance with these summonses, pursuant to the version of section 7609 of the Code then in effect. The United States then petitioned the United States District Court for the District of New Jersey for enforcement of these summonses, and Mr. Conti and his wife intervened in these actions. *United States, et al. v. Midland Bank and Trust Co. v. Frank J. Conti, et al.*, Civil Action No. 80–3599 (D.N.J.); *United States, et al. v. National Community Bank v. Frank J. Conti, et al.*, Civil Action No. 80–3600 (D.N.J.). On December 11, 1980, the court ordered that the summonses were to be enforced. Defendant's Supplemental Exhibit 3c.

Pursuant to these summonses, the IRS obtained, *inter alia,* records of Account No. 031980–3 at Midland Bank and Trust Company, and records of Account No. 129–583–7 at National Community Bank. Both of the accounts were in the name of Freedom Church of Revelation, and both Frank J. Conti and his wife had signatory authority over the accounts.

Summaries of these accounts for the periods specified in the respective summonses (*i.e.,* through the end of 1979) were prepared by the IRS as official agency documents. *See* Defendant's Supplemental Exhibits 4a and 4b; Fed.R.Evid. 803(8), 1006. These accounts contain checks made out to such entities as American Express, New Jersey Bell Telephone, Diners Club, Blue Cross-Blue Shield, and various doctors, dentists, schools, utilities, insurance companies, newspapers, and stores.

A total of $335,592.23 was disbursed by check from these two accounts between July 28, 1979, and December 31, 1979, including $5,489.64 to American Express, and $66,325.09 to International Precious Metals. In the absence of any evidence submitted by plaintiff to explain how the funds in these church accounts were used for legitimate church purposes, the Court must

conclude that the funds in these accounts inured to Mr. Conti's personal benefit.

Under any standard of proof, plaintiff has not established that its earnings did not inure to private individuals as required under section 501(c)(3) of the Code. Because plaintiff has failed to meet the requirements of section 501(c)(3), the Court finds that it is not entitled to continuing qualification as an exempt organization.

■ Finally, the Court must determine whether the revocation should be imposed retroactively. Title 26, Code of Federal Regulations, section 601.201(1)(5), provides in pertinent part:

> Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or proposed transaction, *and* (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment.

26 C.F.R. § 601.201(1)(5) (emphasis added). Plaintiff does not meet all of the requirements set forth in this regulation, thus, it cannot avoid retroactive application of this revocation. The facts upon which the revocation is based are materially different from the representations made in plaintiff's original application for exemption upon which an exemption was granted in 1979. It was only after the IRS granted a tax exemption to plaintiff pursuant to section 501(c)(3) that the IRS found out that Freedom Church was actively promoting tax-avoidance methods and that its earnings were inuring to private individuals, including its leaders. Clearly, these facts as subsequently developed differ materially

from the facts on which the original ruling was based. *See* 26 C.F.R. § 601.-201(1)(5)(ii); *Christian Echoes National Ministry, Inc. v. United States,* 470 F.2d 849, 858 (10th Cir.1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 41, 38 L.Ed.2d 84 (1973); *Incorporated Trustees of the Gospel Worker Society v. United States,* 510 F.Supp. at 380–81.

Accordingly, the Court must sustain the retroactive application of the revocation of plaintiff's tax-exempt status.

## CONCLUSION

In accordance with the above, the Court affirms the final determination of the IRS, dated September 30, 1982; declares pursuant to section 7428 of the Code that plaintiff is not entitled to continuing qualification as an exempt organization under sections 501(a) and 501(c)(3) of the Code, and revokes retroactively the exempt status of Freedom Church, effective for all tax years beginning with 1978. An appropriate order is attached.