**BRIAN RUUD
INTERNATIONAL, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 85–2917.**

United States District Court,
District of Columbia.

April 21, 1989.

---

**15.** *See* Decision Paper, attachment A to government's Motion for Summary Judgment.

John M. Wood, Reed, Smith, Shaw and McClay, Washington, D.C., Thomas Fraser, Fredrickson and Byron, of counsel, Minneapolis, Minn., for plaintiff.

Edward J. Snyder, Michael J. Salem, Attorneys, Tax Div., U.S. Dept. of Justice, Joseph E. diGenova, U.S. Atty., of counsel, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Brian Ruud International (BRI), a religious organization devoted to the ministry of Brian Ruud, seeks a declaratory ruling that it is a tax-exempt religious organization under 26 U.S.C. § 501(c)(3). Presently before the Court is plaintiff's motion for

summary judgment. At a hearing on that motion, the parties agreed to treat defendant's opposition to that motion as a motion for summary judgment on its own behalf. Therefore, this controversy can be determined on the basis of these cross-motions.

## I

### Background

Sections 501(a) and (c) of the Internal Revenue Code allow tax exemptions for organizations that are organized and operated exclusively for religious, charitable, and other specified exempt purposes, provided that no part of the net earnings of the organization inures to the benefit of any private shareholder or individual. Treasury Regulation § 1.501(c)(3)–1(a)(1) requires that, in order to be exempt pursuant to section 501(c)(3), an organization must be both organized and operated exclusively for any one or more of the purposes enumerated in that Code section. An organization is not operated exclusively for such exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals, Treasury Regulation § 1.503(c)(3)–1(c)(2), or if it serves a private rather than a public interest. Treasury Regulation § 1.503(c)(3)–1(d)(1)(ii).

Applying these principles to the facts offered by plaintiff, defendant revoked plaintiff's exemption. In its final action of June 19, 1985, defendant stated:

> You are not operated exclusively for charitable, religious or any other exempt purpose as described in section 501(c)(3) of the Internal Revenue Code. You have been operating in such a manner that a portion of your net earnings has inured to the benefit of private individuals. Moreover, you have been operated to confer a private rather than a public benefit.

In actions for declaratory judgments such as this, the scope of review is confined to the administrative record unless good cause is shown. *Big Mama Rag, Inc. v. United States*, 494 F.Supp. 473, 474 n. 1 (D.D.C.1979). The standard of review is de novo. *Id.* Since defendant relies in its

motion here on the same reasons given plaintiff in the final administrative action, the burden is upon plaintiff to show that defendant's determination is wrong. *Basic Bible Church v. United States*, 74 T.C. 846, 855 & n. 7 (1980). Thus, in order to succeed plaintiff must show (1) that it is operated for public, rather than private, benefit and (2) that no portion of the organization's net income inures to the benefit of a private individual.

One of the most serious problems cited by defendant is plaintiff's failure to maintain satisfactory internal financial controls. Plaintiff concedes that this is the case. This alone is not sufficient to justify the denial of tax exempt status, but it has frustrated the efforts of both parties to determine the extent to which BRI paid for personal expenses of the Ruuds. Nevertheless, the parties have submitted a lengthy administrative record detailing the various accounts and expenses at issue. The Court has reviewed the record in detail, and it concludes that plaintiff has met its burden of showing that defendant's determination was incorrect. Accordingly, plaintiff's motion for summary judgment will be granted.

## II

### Public versus Private Benefit

■ Section 501(c)(3) sets out the specific standards that govern the determination as to whether an organization should be exempt from taxation. The corporation must be "organized and operated exclusively for religious, charitable ... or educational purposes ... no part of the net earnings of which inures to the benefit of any private shareholder or individual...." Courts have long recognized that the two parts of the test are closely interrelated, but plaintiff must satisfy both parts in order to prevail.

It cannot seriously be disputed that plaintiff is a religious organization whose primary purpose is to convey Brian Ruud's teachings to others. The administrative record contains Brian Ruud's speaking schedule and copies of newspaper articles

and promotional material regarding his appearances, all of which indicate that preaching his religion occupied a vast amount of Ruud's time. Further, the record contains the calendar for a retreat in Victoria which also indicates that much time was devoted to prayer meetings, youth groups, and counseling.

Thus this organization differs dramatically from the organizations in the cases cited by defendant which were found not to be organized for religious purposes. *See, e.g., Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531 (1980); *Western Catholic Church v. Commissioner*, 73 T.C. 196 (1979). In both of those cases, the leaders of the organizations spent virtually no time on religious matters, and it was clear that their only purpose was to act as a tax shelter or as an "incorporated pocketbook" for their founders. *Id.*

Even a bona fide religious organization which devotes substantial time to carrying out its religious purposes may still not satisfy the first test. The existence of any nonexempt purpose, if it is "not insubstantial," destroys the exemption. *Freedom Church of Revelation v. United States*, 588 F.Supp. 693, 696 (D.D.C.1984); *see also, Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945). It should be noted that, despite the strong language of *Freedom Church*, it, too, was a case in which the organization's primary purpose was tax avoidance for its members. 588 F.Supp. at 696. Even applying this strict test, however, the Court finds that BRI was not formed for any substantial nonexempt purpose.

In an effort to identify nonexempt purpose of BRI, the IRS contends that BRI operated essentially as a source of credit for Brian Ruud and his wife Gayle. They used a corporate charge card and a corporate account to pay for personal expenses. These expenses were charged to an officer loan account and only later repaid by deducting these amounts from their salary. In one year, Ruud actually only received $1,000 in salary because so much was deducted to repay the corporation for the Ruuds' personal expenses. Defendant does not claim, however, that the Ruuds did not repay their accumulated debts to plaintiff, or that they obtained substantial loans from plaintiff at favorable rates of interest.

Thus, while the argument is made that the corporation served as a private source of credit to the Ruuds, all that this really amounts to is a claim that the corporation paid personal expenses of the Ruuds for which it either was or was not later repaid. This argument relates to the second test, not the first. In fact, one of the decisions that defendant relies on for the proposition that use of the corporation as a private source of credit "in and of itself, indicates a violation of the private benefit rule" actually held that such use of the corporation may violate the rule against *private inurement* (the second part of the test). *Founding Church of Scientology v. United States*, 412 F.2d 1197, 1202, 188 Ct.Cl. 490 (1969).

Defendant has not identified any specific nonexempt purpose for which BRI was organized. Of course, if the corporation was operated for the financial benefit of Brian Ruud, in violation of the second part of the test, it would also violate the first part of the test. It is clear, then, that the real issue in this case is whether any of the net earnings of the corporation inured to the private benefit of the Ruuds. It is to that issue that the parties have devoted the most attention.

### III

### *Private Inurement*

■ The payment of reasonable compensation to ministers does not constitute private inurement. *Founding Church of Scientology v. United States*, 412 F.2d 1197, 1200, 188 Ct.Cl. 490 (D.C.Cir.1969). The question here is whether payments for the benefit of the Ruuds in addition to strict salary payments constitute private inurement or are part of reasonable compensation.

Defendant has identified two different categories of private inurement allegedly received by the Ruuds during 1979 and 1980. The first are personal expenses charged on the corporate "Chargex" account, and the second are personal expenses paid out of the corporate checking account.

According to defendant, the Chargex amounts at issue total $4,153.66 for 1979 and $4,811.29 for 1980. The other personal items paid for by the corporation total $16,299.56 in 1979 and $10,812.02 in 1980. Thus, defendant maintains, corporate earnings amounting to $36,076.53 inured to the benefit of the Ruuds during the two-year period.

While plaintiff does not deny that personal expenses of the Ruuds were paid by the corporation, it does dispute the $36,076.53 figure. First, plaintiff concedes that food and gasoline expenses listed on the Chargex account and the other personal expenditures category are a mixture of personal and business expenses. While plaintiff is unable to determine precisely what portion of these expenses were personal, it notes that the personal expense portion was covered by food and auto allowances given to the Ruuds by the corporation. The allowance provided for $3,000 in food expenditures, and $2,400 in automobile-related expenditures. *See* Exhibit 209–HB. According to Joint Exhibits 104–CZ and 133–EC, the Ruuds exceeded their $3,000 food allowance in 1979 and 1980. Their automobile expenses in those years amounted to approximately $1,000 per year. *See, e.g.,* Exhibit 96–CR.

■ These food and automobile allowances were recommended by BRI's accountant in recognition of the fact that many such expenses were for a combination of business and personal purposes. They were recorded as income and reported on the Ruuds' personal income tax statements. *See* Joint Exhibit 209–HB. Such employee expenses may legitimately be paid to employees without constituting inurement. *Saint Germain Foundation v. Commissioner,* 26 T.C. 648 (1956); *A.A. Allen Revivals, Inc. v. Commissioner,* 22

T.C.M. (CCH) 1435 (1963). The Court finds that the total amount of personal inurement should not include the food and automobile expenses that were covered by the allowance, and that the personal expenditures category should be reduced by $3,000 per year, and the Chargex expenses by approximately $1,000 per year. The reductions bring the total down to $28,076.53.

Plaintiff next claims that the amount of personal inurement identified by defendant should be further reduced because $8,966.00 in personal expenditures during calendar year 1978 were identified by the corporation, charged to Ruud's officer receivable account, and repaid by salary withholding. *See* Joint Exhibit 209–HB. Furthermore, plaintiff asserts that medical expenses totalling $2,644.03 in 1979 and $2,300.19 in 1980 (Canadian dollars) should not be included as personal inurement because BRI's Board of Directors had voted in 1977 to cover the medical expenses of Ruud and his family. *See* Joint Exhibit 34–AH. Such expenses of employees may be paid under Section 105 of the Internal Revenue Code.

Defendant challenges these explanations as insufficient because they are based on authorization by the Board of Directors at a time when the Board was controlled entirely by Brian Ruud. Thus, although the $8,966 charged to the officer receivable account was repaid by salary withheld, the Board retroactively authorized whatever annual salary was needed in order to pay off the account. Similarly, in 1977 when the Board "voted" to pay medical expenses of the Ruuds, there was only one member of the Board who was not a member of the Ruud family. *See* Exhibit No. 34–AH. In fact, it appears that the Board did not even actually meet to approve many of its decisions.

■ This is a terrible way to conduct business. And decisions by corporations whose Boards of Directors are dominated by one person to this degree are subject to more careful scrutiny than are others. *Basic Unit Ministry v. United States,* 511 F.Supp. 166, 168 (D.D.C.1981), *aff'd,* 670 F.2d 1210 (D.C.Cir.1982). Nevertheless,

this alone is not sufficient to deprive the corporation of its tax exempt status. *Bubbling Well*, 74 T.C. at 535. It is important to look not to what the corporation potentially could do, but to what it actually does in determining whether net proceeds inured to any individual's benefit. *Universal Church of Scientific Truth v. United States*, 74–1 U.S. Tax Cas. (CCH) P9360 (N.D.Ala.1973). In this case, although the Board could have authorized retroactively any outrageous salary to cover the Ruuds' personal expenses, in 1979 it in fact authorized a salary of only $22,500, an amount that was very reasonable in light of past practice and of Ruud's value to the corporation.[1] The fact that it was authorized retroactively does not alter the fact that this was reasonable compensation. Similarly, the fact that Ruud controlled the Board that authorized payment of his family's medical expenses does not make this an unreasonable practice. Thus the payments of medical expenses and the repayment of $8,966 authorized by the Board of Directors should also be deducted from the estimated amount of personal inurement. This reduces the total to approximately $15,000 for the two-year period.

Finally, plaintiff claims that only $2,686.21 of the remaining amount consists of pure personal expenses. These expenses include pre-school tuition, drycleaning bills, and traffic tickets. According to plaintiff, the remaining travel and restaurant expenses, the housekeeper's salary, photography expenses, and several other expense items are mixed personal and business expenses which it cannot separate.

Defendant maintains that this very inability to determine what percent of the remaining $12,000 in expenditures were personal is fatal to plaintiff's case—that if its accounting system is unable to break down these expenses, then the plaintiff, and not the government, must bear the responsibility for and the cost of such a failure. Defendant cites *Basic Unit Ministry v. United States* for the proposition

that in cases where there is evident potential for abuse, the plaintiff must disclose all facts pertaining to the operation and finances of its organization. 511 F.Supp. 166, 168 (D.D.C.1981), *aff'd,* 670 F.2d 1210 (D.C.Cir.1982); *see also, Bubbling Well,* 74 T.C. at 535. In those cases, however, plaintiffs had simply refused to cooperate with the government. They refused to supply any information about their source of funds or their membership. That is entirely different from the instant case in which plaintiff has supplied the government with substantial amounts of information and records, has actively negotiated with the government, and is simply unable, several years after the fact, to determine whether business was or was not conducted in the course of specific meals eaten at specific restaurants on specific days.

Furthermore, although the state of the records in this case is indefensible, it is not necessary to determine precisely what portion of these expenses is business related and what portion is personal. Even if all of these expenses are personal, they still constitute reasonable compensation when added to the salaries paid to the Ruuds. As stated above, the expenses that have not satisfactorily been accounted for total approximately $15,000, or $7,500 per year. When added to Brian Ruud's salary in 1979, the total is $30,000. Moreover, although the salary approved for Ruud in 1980 was $36,000, he was actually only paid $6,000. Therefore when the $7,500 is added to Ruud's payments in 1980, he still received less than the salary approved by the Board.

■ Several courts have held that payments in addition to salary are not necessarily private inurement if, when these payments are added to the salary, compensation is still reasonable. *A.A. Allen,* 22 T.C.M. (CCH) 1435 (1963); *Universal Church of Scientific Truth v. United States,* 74–1 U.S. Tax Cas. (CCH) P9360 (N.D.Ala.1973); *Saint Germain Founda-*

---

**1.** The 1980 salary was $36,000 for Brian Ruud and $12,000 for Gayle Ruud. It was not authorized retroactively. *See* Joint Exhibits 66–BN and 68–BP. In fact, for reasons that are not explained by BRI or the government, Brian Ruud only received $6,000 and Gayle Ruud was paid nothing. Joint Exhibit 209–HB.

tion v. Commissioner, 26 T.C. 648 (1956). The amounts received in A.A. Allen were approximately equal to the salary plus personal expenditures of Brian Ruud. And that case was decided in 1958. Whether compensation is reasonable or not is a question of fact to be decided in light of all the circumstances. Founding Church, 412 F.2d at 1200; Enterprise Railway Equip. Co. v. United States, 161 F.Supp. 590, 595, 142 Ct.Cl. 192 (1958). Brian Ruud was almost singlehandedly responsible for the earnings of the corporation. In 1979 those earnings totalled $331,628 and in 1980 they totalled $309,841. Joint Exhibits 139–EJ and 142–EM. Brian Ruud's compensation, even including payments for personal expenses by the corporation, was not excessive.

It is true that some courts have stated that the amount of the inurement is not determinative. See, e.g., Founding Church of Scientology, 412 F.2d at 1200; Freedom Church, 588 F.Supp. at 698; Church of the Transfiguring Spirit, Inc. v. Commissioner, 76 T.C. 1, 5 (1981). In these cases, however, the amounts received could not be justified as part of reasonable compensation. In Freedom Church, for example, no claim was raised that the expenditures at issue were part of reasonable compensation. In fact, no explanation was given for corporate expenditures totalling $335,592.23.

In Transfiguring Spirit, an amount less than the $15,000 at issue in this case was found to constitute personal inurement. Id. However, as a percentage of the corporation's net earnings it was very large, the Court holding that payments totalling $1,390.32 for the church leader's housing allowance constituted personal inurement because that amount represented virtually all of the corporation's earnings. Id. This raised serious questions not only as to private inurement, but also as to what public purpose the corporation served. In this case, the corporation earned over $300,000 and Ruud kept a relatively modest amount for himself—even counting all of the personal expenditures listed by the government.

The court in Founding Church of Scientology considered payments to L. Ron Hubbard and his family. These payments exceeded over $108,000 during the years between 1955 and 1959. In addition, Hubbard received a percentage of the gross income from affiliated Scientology organizations. Payments to Hubbard included royalties, commissions, loans and reimbursements for expenses. The nature of the loans and reimbursements was not explained in the record. In addition, there were unjustified or unexplained payments to Hubbard's family including loans, rent that was not shown to be reasonable, and salary paid to Hubbard's daughter without any showing that she performed any services to the organization. On this basis, the Court concluded that the payments to the Hubbards were "disguised and unjustified distributions of plaintiff's earnings." 412 F.2d at 1201. They therefore constituted personal inurement and could not be justified as part of reasonable compensation.

The government does not allege that payments to Ruud are disguised distributions of corporate dividends. Rather, the claim is that the accounts of the organization and of the Ruuds were not kept sufficiently separate so that the organization may have paid up to $15,000 in personal expenditures for Ruud over a two-year period. Any suggestion of an effort to disguise distributions of corporate dividends is belied by the fact that the nature of the expenditures was clearly recorded and an effort was made to repay personal expenditures through the officer receivable account. Furthermore, any personal expenditures that remained unaccounted for were more than compensated for in 1980 when Ruud received only $6,000 of the $36,000 salary that was approved for him. The Court finds there was no private inurement because the sums at issue are part of reasonable compensation.

## IV

### Conclusion

There is no question that there was ample potential for abuse in this case. Brian

Ruud and his family controlled completely a religious organization with income exceeding $300,000 per year. In addition to its income, the corporation owned valuable assets including the retreat where the Ruuds lived and several cars. The corporate and personal accounts were not adequately separated. In the end, however, after a lengthy investigation, the government has no quarrel with the cars or the retreat. It only disputes relatively minor expenses that easily fall within the bounds of reasonable compensation. Thus it does not appear to this Court that any such abuse actually occurred. Because the Court finds that BRI was organized exclusively for religious purposes and no portion of its earnings inured to the personal benefit of Brian Ruud, the Court finds that its tax exempt status should not have been revoked, and summary judgment will be granted to the plaintiff.

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, the oppositions thereto, the entire record herein, and in accordance with the Memorandum issued contemporaneously herewith, it is this 21st day of April, 1989

ORDERED that plaintiff's motion for summary judgment be and it is hereby granted; and it is further

ORDERED that defendant's motion for summary judgment be and it is hereby denied; and it is further

ORDERED that judgment be and it is hereby entered in favor of plaintiff declaring that plaintiff is a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(3).