SELF-REALIZATION BROTHERHOOD, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Self-Realization Brotherhood, Inc. v. Commissioner
Docket No. 12735-82X.
United States Tax Court
T.C. Memo 1984-319; 1984 Tax Ct. Memo LEXIS 358; 48 T.C.M. (CCH) 344; T.C.M. (RIA) 84319; June 21, 1984. Joseph J. LaGosh (an officer), for the petitioner. Joan R. Domike, for the respondent. BUCKLEY
OPINION BUCKLEY, Special Trial Judge: This is an action for declaratory judgment [1] under section 7428 of the Code. [2] It has been decided pursuant to the provisions of section 7456(d) and Rule 218(a). The case was submitted on a stipulated record under Rule 122 and the stipulated record is incorporated herein by this reference. The Self-Realization Brotherhood, Inc. (hereafter SRB) was incorporated under the laws of the State of Wisconsin on May 19, 1978, as a not-for-profit corporation. *361 Its incorporators were Floyd Jerred, David P. Dumbleton and Pamela Jerred, wife of Floyd. Its purposes were stated to be-- not for pecuniary profit or gain of any of the members hereof but for religious and charitable purposes: to cultivate, promote, promulgate and extend the teachings and precepts of the highest moral and spiritual principles and truths, including the offering, presenting, and teaching of instructional courses to promote the spiritual, mental, physical, moral, ethical, and social welfare of its membership and humanity; for the development and maintenance of an organized universal brotherhood, and the granting of appropriate formal recognition upon successful advancement in spiritual study. The initial board of directors consisted of the three incorporators. At the first meeting of the board of directors, Floyd Jerred was elected president, David P. Dumbleton, vice president and Pamela Jerred, secretary. The SRB then formed a "charter agreement" by which chapters were to be formed. Each chapter was to have a governing body of at least three persons: a minister of mysticism, a secretary and a treasurer. A monthly fee of $3 or 3 percent of the donations received *362 in mystic path study groups or other spiritual meetings were to be sent by each chapter to the SRB as a chapter maintenance fee. The 3 percent fee was not to be computed on donations made by the minister or his family. The SRB also drafted a "ministers' agreement" in which it was provided that-- as a minister of mysticism, I am allowed to have an affiliation or membership in other spiritual or religious organizations. And that I am permitted to give the name of this organization when asked at any time. But, I am not permitted to enter into any discussions on religious doctrines or dogma, nor am I allowed to teach or practice psychic phenomena, mediumship, hypnosis or other dangerous psychic activity. The minister agreed to pay SRB a sum of $3 per month as a "minister maintenance fee." The SRB, in its application for tax exemption, described itself as a "spiritual order" in which all of its members are ministers of mysticism of the sixth degree or greater, plus ministers of mysticism of a lesser degree who serve on the board of directors. The purpose of the SRB is to teach principles of spiritual psychology, mysticism and soul travel to everyone who wishes to improve their *363 spiritual life and establish themselves in the heavenly state of consciousness and to provide a way of life conducive to these ends. These aims were to be accomplished through the following programs: 1. The training and licensing of counselors of "Essential-Self Dynamics." This training is based on the principles of spiritual psychology, which is a study of the nature of soul and its function within the individual. The license granted entitles the individual to do individual, marriage and family counseling, also to hold classes on "Essential-Self Dynamics." 2. The training and commissioning of Ministers of Mysticism.This training is based on the principles of spiritual psychology listed above plus the principles of mysticism and soul travel which include the principles of love detachment, self-realization and God realization through soul travel. The commissioned Ministers of Mysticism have the right to hold classes on practical mysticism and to perform all the regular duties of a minister for his class members such as performing weddings, baptisms and funerals. These ministers and a responsible group of class members can apply for and receive an independent chapter charter *364 of the "Self-Realization Brotherhood." 3. The sponsoring of classes on "Essential-self Dynamics" open to the public. In these classes an individual can learn how to use the principles of spiritual psychology to improve their life and be happier. 4. The sponsoring of classes on "Practical Mysticism" open to the public. In these classes an individual can learn the principles of mysticism and soul travel which will lead them into the higher states of spiritual consciousness. 5. The members of the "Self-Realization Brotherhood" are taught the highest secret teachings of spirituality and are provided a way of life that aids and supports its members in accomplishing detachment from the materialistic side of life. Those ministers of mysticism who are masters of the sixth degree or greater are permitted to take the vow of proverty and enter into a totally spiritual way of life. The application for exemption states that SRB's sources of financial support will be routine fund raising activities such as counseling and carpet installing by Brother Floyd Jerred, M.M., donations by members and associate members, class fees from essential-self dynamics classes and practical mysticism *365 classes; training fees for training in essential-self dynamics licensed counseling; and through plans to sell food products such as vitamins, cheese and honey. The exemption application states that Brother Floyd Jerred has taken the vow of poverty and given all personal property and assets to the SRB and that it is expected that others will take the vow of poverty and enter into a truly spiritual life. Subsequently, others took a vow of poverty. The certificate of incorporation of the SRB did not contain a provision to the effect that no part of its net earnings would inure to the benefit of any private shareholder or individual. Further, it did not contain a specific provision in regard to the distribution of its assets upon a dissolution. However, on November 17, 1981, the SRB filed with the State of Wisconsin an amendment to its articles of incorporation providing for disposition of its residual assets as follows: Upon the event that the Self-Realization Brotherhood, Inc. is dissolved or would be abandoned or become inactive, the residue assets shall go to: 1st - Eckankar Chapter of Madison, Wis., if ineligible, 2nd - Eckankar Incorporated of Calif., A Calif. Corporation, *366 if ineligible, 3rd - The State of Wisconsin
Ministers of SRB have performed four weddings and one christening. They do not have any activities for children similar to a Sunday school, but children 13 years or older are allowed to attend regular classes. They conducted various study groups in essential-self dynamics [3] and practical mysticism. Each class took between 12 to 19 weeks, depending on the minister of mysticism who formed the class and how fast the group attending grasped the principles being taught. Each class met about 1 1/2 hours per week. There was no official enrollment or membership in the classes which were conducted as a series of lectures. A person attended only those classes which he wished to attend. A $3 fee was collected at the door in essential-self dynamics classes. In the classes on practical mysticism the individual left a donation in a box as they left. *367 Members of a class in practical mysticism and its minister of mysticism have the right to apply for a chapter charter [4] and establish their own membership rolls and bylaws. Most of the ministers of mysticism held classes in their own homes. The SRB pays the rent for the apartment in which the Rev. Joe LaGosh and Brother Floyd Jerred reside although the individuals signed the lease. The SRB stated that the living room and dining room of that apartment have been converted into a counseling office and meeting room. On occasions the SRB rents a meeting room for large promotions. Financial data submitted by SRB indicates that substantially all cash or liquid assets have been disbursed to its members for living costs. Thus, at the end of 1978, its assets consisted only of beekeeping equipment and the equity interest in Floyd Jerred's truck, all of which had been contributed during the year. Its funds were expended for payments on the truck used in the carpet-laying business, *368 utilities and living expenses of its members. [5]
Its financial status as of the end of 1979 was similar to that of 1978. The total receipts for the year were $23,198.35 of which $14,289.50 was raised by Floyd Jerred from carpet installation and carpeting and $5,618.85 in assessments *369 from the Rev. Anna Buchanan. Included among the disbursements for the year were housing allowances for the Rev. Buchanan ($1,941.32); for Rev. Pam Jerred ($2,150); living expenses for Floyd Jerred ($4,008.74); and Rev. Anna Buchanan ($1,941.32). At year end, all receipts with the exception of the equity interest in a Dodge van contributed by Anna Buchanan were expended. [6]
*370 The record indicates a similar situation for 1980. Thus in that year $22,735.44 was received in gross receipts from carpet installation and counseling and $12,153.13 in dues. Housing allowances of $1,185.35 were paid to Joe LaGosh; $1,788 to Pam Jerred; $6,307.82 to Anna Buchanan; $3,864.17 to Linda LaGosh; and $7,138.75 to Floyd Jerred. Various costs related to the carpet installation business were also paid. The expenditures for the year equaled the receipts.[7]
*371 As of April 1, 1981, the assets and liabilities of SRB were as follows: ASSETS
Cash on hand and in banks
$ 225.95
Automobiles
5,000.00
Tools & office equipment
4,000.00
Bee hives
9,500.00
Total assets
$18,725.95
LIABILITIES
None
TOTAL NET WORTH
$18,725.95
SRB furnished an itemized list of receipts and expenditures for the month of March 1981 which shows, among the withdrawals, payments for Linda LaGosh's mortgage, telephone and cash for her; telephone charges for the apartment in which Floyd Jerred and Joe LaGosh resided; payments for electricity, for subcontracting for carpet installation, for carpet supplies; cash for Floyd Jerred; wine for Floyd Jerred; payments for term life insurance on the life of Floyd Jerred; various medical bills for Floyd Jerred; as well as hospitalization insurance for which the beneficiary was not noted. The original application of SRB sought exemption under section 501(c)(3). The Internal Revenue Service proposed to deny the application, stating that SRB was neither organized nor operated for exempt purposes, that its earnings inured to the benefit of private individuals, and that contributions to the organization were *372 not deductible under section 170(c) of the Code. As a result of this proposed ruling, which was protested by SRB, it amended its Article II, as stated above, to provide for the disposition of residuary assets. In its protest, SRB indicated that it believed it should be classified as a church within the meaning of section 170(b)(1)(A)(i) or in section 1.508-1(a)(3)(i)(a), Income Tax Regs. Thereupon, the Internal Revenue Service issued another proposed ruling holding that SRB was not exempt under section 501(c)(3), that in order to be a religious order an organization must meet the threshold requirement of exemption under section 501(c)(3). It went on to hold that SRB was not an organization described in section 170(b)(1)(A)(i). Thereafter, SRB protested once again, stating that while it did not wish to be called a "church" it wished to be considered for exemption under section 170(b)(1)(A)(i) as "a spiritual or religious organization performing essentially the same functions as a church." Thereupon, the Internal Revenue Service issued its final ruling: You are not organized exclusively for exempt purposes as required by section 501(c)(3). You are *373 not operated exclusively for exempt purposes as required by section 501(c)(3). You are operated in furtherance of a substantial non-exempt purpose. Furthermore, your net earnings inure to the benefit of private individuals. You serve private rather than public interests. Moreover, even if you were described in section 501(c)(3), you would be a private foundation because you are not an organization described in section 170(b)(1)(A)(i), the only basis upon which you seek non-private foundation status. Contributions to your organization are not deductible under Code section 170. It is held that the SRB is not organized or operated exclusively for exempt purposes as required by section 501(c)(3), that it is operated in furtherance of a substantial nonexempt purpose, the installation of carpets, and that its net earnings inure to the benefit of private individuals. It therefore is held not to be exempt under section 501(c)(3). It is well settled that petitioner bears the burden of proving that it is entitled to a declaratory judgment and that it is exempt under section 501(c)(3). *374 Section 7428(a) grants this Court jurisdiction to review an organization's qualification as an organization described in section 501(c)(3) which is exempt from taxation under section 501(a). Our determination is based upon the facts contained in the administrative record. That determination will be made, ordinarily, upon the basis of the administrative record (as defined in Rule 210(b)(11)(ii)) filed with the Court Rule 217(a). The burden of showing that the respondent's determination is incorrect rests upon the petitioner. National Association of American Churches v. Commissioner,82 T.C. 18 (1984); Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488 (1977); Rule 217(c)(2). Petitioner has failed to meet its burden. Section 501(c)(3) includes in its list of exempt organizations those "Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing *375 for public safety, literary, or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual." SRB fails to meet the requirements of the section. It was not "operated" exclusively for exempt purposes. The administrative record indicates that it was operated in substantial degree to engage in the business of laying carpet. Floyd Jerred had been in such a business prior to the organization of SRB and it was clear that the organization was formed to continue in that business. In fact, most of its operations consisted of carpet laying. It therefore fails the operational test for exemption. Clearly, carpet laying serves a substantial nonexempt purpose. See, e.g., Ecclesiastical Order of ISM of AM v. Commissioner,80 T.C. 833 (1983). Its nonexempt operations were substantial in nature. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.The existence of a single nonexempt purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of exempt purposes. *376 Better Business Bureau v. United States,326 U.S. 279 (1945); National Association of American Churches v. Commissioner,supra, at 28, 29. See also, Parker v. Commissioner,365 F.2d 792 (8th Cir. 1966). Since it is clear that the laying of carpet does not constitute a religious operation, so that petitioner has failed the operational test, it becomes unnecessary to decide whether petitioner was organized for religious purposes. [8] Under our view of this matter we avoid the "most delicate question," Wisconsin v. Yoder,406 U.S. 205, 215 (1972), whether the beliefs of the members of SRB or the principles of SRB were in fact religious. Canada v. Commissioner, 82 T.C.     (June 18, 1984). Thus, we need not consider whether the charter and statements of petitioner in fact indicate that it is a religious organization. Similarly, we need not decide respondent's contention that the assets of petitioner are not dedicated to an exempt purpose because of the nature of the dissolution clause in its Articles. [9]
*377 Even assuming, arguendo, however, that petitioner is a religious organization, it still fails to meet the definitional test of section 501. One of the requirements of the section is that no part of net earnings inures to the benefit of any individual. [10] Almost all of the net earnings of SRB were disbursed to those persons who had originally made contributions to the organization by means of SRB's payment of the ordinary day-to-day costs of living of its contributors. These costs ran the gamut from rent to insurance payments to wine. This factual situation is almost identical to that in Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1 (1981), in which we affirmed the denial of the exemption where virtually all of the net earnings of the organization were expended as housing allowances to those persons who had originally made the contributions to the organization. See also McGahen v. Commissioner,76 T.C. 468 (1981), affd. by an unpublished opinion 720 F.2d 664 (3d Cir. 1983); Basic Bible Church v. Commissioner,supra.The administrative record makes it apparent that petitioner serves *378 a private rather than public purpose. Southern Church of Brotherhood v. Commissioner,85 T.C. 1223 (1980); sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. SRB serves the private interests of those of its members who have made contributions to it. See Western Catholic Church v. Commissioner,73 T.C. 196 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir., Sept. 19, 1980). We find that the net earnings of SRB inured to private individuals so that it fails to fall within the guidelines of section 501(c)(3). Accordingly, upon this ground too we must affirm the determination of the respondent that petitioner is not exempt from taxation under the provisions of section 501(c)(3). Decision will be entered for the respondent.
Footnotes
1. The prerequisites for declaratory judgment have been met: petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted all its administrative remedies, sec. 7428(b)(2); petitioner timely filed its petition with this Court, sec. 7428(b)(3)↩. 2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. In January of 1980 the SRB registered a trade name with the State of Wisconsin, "Essential-Self Psychology." The application went on to state that the SRB "trains and licenses↩ counselors in the science of Essential-Self Psychology." It shortly thereafter apparently filed a subsequent application for a trademark under the title "Essential-Self Psychology or Dynamics."
4. The SRB has issued three chapter charters, charter number one to the Rev. Dave Dumbleton and group; charter two to the Rev. Jay O'Neill and group; and charter three to the Rev. Linda LaGosh and group.↩
5. RECEIPTS AND EXPENDITURES OF SRB FOR PERIOD ENDING DECEMBER 1978
↩
Receipts
Contributions and gifts
$10,500.00
Beekeeping equipment
$9,500.00
1972 Chevy truck
1,000.00
equity value from Floyd Jerred
Gross dues from assessments of members
1,816.94
($1,523.98 cash from unnamed persons)
Amounts raised by Floyd Jerred from
carpet installing and counseling
7,055.27
Total receipts (rounded by petitioner)
$19,372.00
Expenditures
Fund -raising expenses
2,260.86
Compensation of officers--personal
living expenses of Bro. Floyd Jerred,
M.M. Pres.
2,189.13
Other salaries and wages
197.77
Vehicle payments, gas &
repairs (mainly for
truck used for carpet
installation
$2,478.10
Utilities
595.90
Printing
137.85
Insurance
489.99
Housing
522.40
4,224.24
Total expenditures
$ 8,872.00
Excess of receipts over expenditures
$10,500.00
6. RECEIPTS AND EXPENDITURES, DECEMBER 1979
↩
Receipts
Contributions and gifts
1978 van (Dodge) equity
(from Anna Buchanan)
$ 1,000.00
Dues and assessments from
Anna Buchanan
5,618.85
From named persons
1,014.00
From unnamed persons
1,523.98
[Total per petitioner]
7,908.85
Amounts raised by Floyd Jerred from
carpet installing and counseling
14,289.50
Total receipts
$23,198.35
Expenditures
Fund-raising expenses
$ 2,756.19
Disbursements to or for benefit
of members
4,091.32
Rev. Anna Buchanan--
Arlington Tex. associate
member housing allowance
1,941.32
Rev. Pam Jerred--
Middleton, Wis. associate
member housing allowance
2,150.00
Compensation of officers--
personal living expenses of
Bro. Floyd Jerred, M.M. Pres.
4,008.74
Other salaries and wages
906.71
Rent
2,237.00
Vehicle payments, gas &
repairs
6,121.55
Utilities
440.28
Printing
165.84
Insurance
1,470.72
8,198.39
Total expenditures
$22,198.35
Excess of receipts over expenditures
$ 1,000.00
7. RECEIPTS AND EXPENDITURES FOR PERIOD ENDING JANUARY 3, 1981
Gross gifts--1976 Dodge
from Joe LaGosh, M.M.
$ 1,800.00
Gross dues ($9,294.40 contributed
by Anna Buchanan)
12,153.13
Gross amounts raised by Floyd Jerred
from carpet installing and counseling
22,735.44
Total receipts
$36,688.57
Fund-raising expenses
$ 4,519.47
Contributions (Eckankar)
75.00
Disbursements for benefit of members: Housing allowances for--
1. Joe LaGosh, M.M. before moving
in with Bro. Floyd Jerred
1,185.35
2. Pam Jerred, M.M. stopped at the time
she and Floyd apparently became or
contemplated becoming divorced
1,788.00
3. Anna Buchanan, M.M.
6,307.82
Compensation of officers: 1. Housing allowance for Linda LaGosh,
M.M. Treas.
3,864.17
2. Bro. Floyd Jerred, M.M. Pres.
personal living expense
7,138.75
Other wages
584.00
Rent
3,042.00
Other: Vehicle payments, gas & repairs
5,373.89
Utilities
784.54
Ads & Printing
616.12
Ins.
1,409.46
Total expenditures
$36,688.57
Expenditures for calendar year 1980 equaled the year's receipts of $36,688.57.↩
8. We do note, however, that petitioner's ministers were not permitted to enter into any discussions on religious doctrine or dogma. ↩
9. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.; cf. General Conference of the Free Church v. Commissioner,71 T.C. 920↩ (1979).
10. The "operated exclusively for exempt purposes" and the "private inurement" requirements often substantially overlap. See Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1, 5↩, n. 5 (1981).